United States Court of Appeals,

Fifth Circuit.

Nos. 92-7162, 93-7036.

Nenita S. VILLAR, Etc., et al., Plaintiffs-Appellants,

v.

CROWLEY MARITIME CORPORATION, et al., Defendants-Appellees.

Nenita S. VILLAR, Etc., et al., Plaintiffs,

Gary Riebschlager and Benton Musslewhite, Appellants,

v.

CROWLEY MARITIME CORPORATION, et al., Defendants-Appellees.

May 25, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before JOHNSON, JOLLY, and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This suit is the third successive one that the plaintiffs have brought for the wrongful death of Renerio Z. Villar, a citizen of the Philippines. In the first two suits, California state and federal courts dismissed the plaintiffs' suit based on *forum non conveniens.* Furthermore, the Ninth Circuit held that *no* forum in the United States would be convenient. Yet, over ten years after filing the first suit, the plaintiffs brought the instant suit in Texas state court. The defendants removed the suit to federal court. The federal court dismissed the claims against the foreign defendants because the district court lacked personal jurisdiction over them. The district court then dismissed the claims against the remaining defendant because the district court was an inconvenient forum, 780 F.Supp. 1467. Finding that the plaintiffs' arguments are without merit, we affirm the decision of the district court.

I

In the 1970's, Villar worked in Saudi Arabia as a crew member aboard the tugboat BANNOCK. Villar worked for defendant SATOL, a Saudi Arabian corporation, under an employment contract executed in the Philippines. Villar's employment contract provided that if he

was injured in the course of his employment, he could choose compensation under either the Philippine's worker's compensation law or the law of country in which the BANNOCK was registered. It turns out that the BANNOCK was registered under Panama's flag.

In March of 1977, Villar fell overboard and drowned. At that time, defendant GTO Corporation owned sixty percent of SATOL, Villar's employer. Defendant Crowley Maritime Corporation ("CMC"), in turn, owned one-third of GTO.

In 1980, Nenita S. Villar, Josephine Villar, Geraldo Villar, Reynaldo Villar, and Renerio Villar, Jr. (hereinafter "the Villars") sued SATOL, GTO, CMC, and other related corporations in the United States District Court for the Northern District of California. Four years later, the California district court dismissed the Villars' suit on grounds of *forum non conveniens.* The district court conditioned its dismissal on the defendants' agreement to waive all jurisdictional, venue, and statute of limitations defenses to any action the Villars brought in the Philippines in the next year. The Ninth Circuit affirmed the dismissal in February of 1986. *Villar v. Crowley Maritime Corp.,* 782 F.2d 1478 (9th Cir.1986).

After the first dismissal, the Villars chose not to sue the defendants in the Philippines. Instead, the Villars filed an identical lawsuit in California state court. The California state court, like the California federal court, dismissed the Villars' suit based on the doctrine of *forum non conveniens,* and in December of 1990 the California Court of Appeals affirmed. The Villars still have not attempted to sue in the Philippines, Saudi Arabia, or Panama.

II

The persistent Villars have now sued the same defendants in Texas state court. One of the weary defendants, CMC, removed the proceeding to federal court based on diversity of citizenship. CMC is a Delaware corporation that is registered to do business in Texas and has its principal place of business in California. Although some of the defendant corporations are foreign corporations and, hence, not diverse with the Villars, CMC alleged that the Villars fraudulently joined the foreign corporations to defeat diversity jurisdiction. CMC further argued that the district court should ignore the citizenship of the foreign corporations because there was no way the district court could

constitutionally exercise *in personam* jurisdiction over those defendants. CMC then moved to dismiss the claims against it on grounds of *forum non conveniens,* and the foreign corporations moved to dismiss the action against them because the district court lacked personal jurisdiction over them.

In response, the Villars moved to remand the proceeding to Texas state court because there was incomplete diversity of citizenship. The Villars urged the district court to consider their motion to remand before considering the defendants' motions to dismiss. In case the district court rejected their primary argument, the Villars made three alternative arguments. First, the Villars argued that they had not fraudulently joined the foreign corporations. Second, they argued that the court does have personal jurisdiction over the foreign defendants because CMC, which is in Texas, was the alter ego of at least some of the foreign defendants. Thus, the district court should attribute CMC's Texas contacts to the foreign defendants, giving the district court jurisdiction over those defendants. Finally, the Villars argued that the district court should deny CMC's motion to dismiss based on *forum non conveniens* because, as a federal court sitting in diversity, the district court should apply Texas state law, which does not recognize the doctrine of *forum non conveniens.*

Deciding the foreign defendants' motions first, the district court found that the Villars had failed to make a *prima facie* case for the district court's personal jurisdiction over those defendants. The district court found that the foreign defendants did not have the necessary minimum contacts with the state of Texas, and that they were not the alter egos of CMC. Having dismissed the claims against the foreign corporations, the district court found that complete diversity existed and denied the Villars' motion to remand to state court. Alternatively, the district court held that, even if it must consider the Villars' motion first, complete diversity still existed because there was "no possibility" that the Villars could establish that the court had personal jurisdiction over the foreign defendants. Thus, the district court would still deny the Villars' motion to remand and grant the foreign defendants' motion to dismiss.

The district court then turned to CMC's motion to dismiss for *forum non conveniens,* which it granted. The district court held that after the California district court dismissed the Villars' suit based on *forum non conveniens,* the issue became *res judicata.* Alternatively, the district court held

that the Fifth Circuit's law on *forum non conveniens* applied, and that the Fifth Circuit's law required the dismissal of the action against CMC.

In addition, the district court, *sua sponte,* enjoined the Villars from instituting another action based on the underlying dispute in any other state or federal court in the United States. Finally, the district court sanctioned the Villars' attorneys under Rule 11 of the Federal Rules of Civil Procedure, for making unreasonable and insupportable arguments.[1]

Complaining of multiple errors below, the Villars appeal all of the district court's orders.

III

A

The Villars' primary point on appeal is that the district court erred when it chose to consider the foreign defendants' motion to dismiss for lack of personal jurisdiction before considering their motion to remand for lack of complete diversity. The Villars contend that the district court should have considered the motion to remand first because it would have been simpler and more convenient to resolve the motion to remand.

According to the Villars, the motion to remand is simpler because, under the applicable standard of review, the district court need only determine whether there is a *possibility* the plaintiff could establish jurisdiction over the defendant. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983). The district court can usually make this decision without a full scale evidentiary hearing. *Id.* at 204 n. 2. The motion to dismiss, on the other hand, is more complicated because the district court will generally have to hold an evidentiary hearing in which the plaintiff must prove, by a preponderance of the evidence, that the court has personal jurisdiction. *CutCo Industries, Inc. v.*

---

[1]In their original notice of appeal, the Villars' attorneys failed to appeal the district court's Rule 11 sanctions in their own names as required by our rules. In an unpublished opinion, we dismissed that portion of the appeal and struck the portion of their briefs pertaining to sanctions. After we dismissed that portion of the appeal, the Villars' attorneys obtained a Rule 58 judgment as to sanctions and filed a timely notice of appeal. The Villars' attorneys then moved us to consolidate the two appeals, rescind our order striking portions of their briefs, and adopt the briefs presently on file in this appeal. We granted these motions.

*Naughton,* 806 F.2d 361, 364 (2d Cir.1986).[2]  The Villars also contend that the principles of comity and federalism suggest that the district court should have considered the motion to remand first.[3]

Unfortunately for the Villars, we have already rejected their primary argument.  *Walker v. Savell,* 335 F.2d 536, 539 (5th Cir.1964).  In *Walker,* we clearly held that district courts have the power to rule on motions challenging personal jurisdiction before reaching motions to remand.  As we noted, judicial economy favors this result because if the district court remands the proceeding, then the state court will probably have to decide the same motion to dismiss for lack of personal jurisdiction that the district court avoided.  Furthermore, the district court must necessarily address the issue of personal jurisdiction regardless of which motion it addresses first.  The Villars' argument that the standard for det ermining personal jurisdiction will vary depending on which motion the district court decides first does not change the fact that the district court will still have to address the issue of *in personam* jurisdiction.

We recently reaffirmed our holding in *Walker,* which continues to be the law in this circuit.  *Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1066 (5th Cir.1992); *see also Nolan v. Boeing Co.,* 736 F.Supp. 120, 122 (E.D.La.) (affirmed 919 F.2d 1058 (5th Cir.1990)).  Thus, we must reject the Villars' argument.

Even if we could overrule our holding in *Walker* and require the district court to rule on the Villars' motion to remand first, the Villars' argument would still fail because the district court did as the Villars asked it to do:  It applied the standard the Villars suggested and, alternatively, held that

---

[2]This argument is somewhat misleading.  Even the cases the Villars cite clearly recognize that district courts often decide motions to dismiss for lack of personal jurisdiction without an evidentiary hearing.  *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985) ("When the district court decides the defendant's motion [to dismiss for lack of personal jurisdiction] without an evidentiary hearing, the plaintiff's burden is met by presenting a prima facie case for personal jurisdiction.")

[3]In support of their position, the Villars cite *Allen v. Ferguson,* 791 F.2d 611, 615 (7th Cir.1986).  In *Allen,* the Seventh Circuit held that, when a district court is faced with both a motion to remand and a motion to dismiss for lack of personal jurisdiction, the district court can only resolve the motion to dismiss first if it finds that the plaintiff could not obtain personal jurisdiction over the defendant.  Seventh Circuit cases, of course, are not binding in this circuit.  Yet, even if we applied *Allen,* the district court still would have had the power to resolve the motion to dismiss first because the district court found that there was no possibility the Villars could obtain jurisdiction over the foreign defendants.

there was no possibility that the Villars could prove that the court had personal jurisdiction over the foreign defendants. The district court then denied the Villars' motion to remand because the Villars had fraudulently joined the non-diverse foreign corporations to defeat the district court's diversity jurisdiction.

B

The Villars also contend that the district court erred when it denied them additional discovery. The decision not to permit additional discovery "on a motion to dismiss for lack of personal jurisdiction is specifically one for the trial court's discretion, and "[s]uch discretion will not be disturbed ordinarily unless there are unusual circumstances showing clear abuse.' " *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982) (quoting *Associated Metals & Minerals Corp. v. S.S. Geert Howaldt,* 348 F.2d 457, 459 (5th Cir.1965)).

The Villars wanted to engage in additional discovery so that they could find facts that would show that the foreign defendants were doing business in Texas and, thus, subject to personal jurisdiction in Texas. The Villars argue that they have never had an opportunity to do discovery on this issue. In support of their position, the Villars cite several cases in which we reversed a district court for failing to grant the plaintiff discovery on the issue of the defendants' amenability to the court's jurisdiction. *See Skidmore v. Syntex Laboratories, Inc.,* 529 F.2d 1244 (5th Cir.1976).

The district court denied the Villars additional discovery because the Villars had conducted extensive discovery during the two suits in California. The district court reasoned that the Villars' discovery on the *forum non conveniens* issues involved many of the same facts that the Villars were attempting to discover in the present suit. *See Wood v. Santa Barbara Chamber of Commerce,* 507 F.Supp. 1128 (D.Nev.1980). Finding that the Villars would not discover anything that they had not already learned in the first ten years of the litigation, the district court concluded that further discovery would serve only to vex and harass the defendants. Indeed, in the California suits the Villars were looking for any facts that might tie the defendants to the United States in general and California in particular. Thus, it is not surprising that the Villars inquired into the defendants' ties to

Texas during the earlier litigation.[4] Given the facts of this case, the district court clearly did not abuse its discretion when it curtailed discovery.

C

We will now turn to the Villars' argument that the district court erred when it decided not to remand the proceeding to the state court. The Villars contend that they presented sufficient evidence to prove that the district court could legitimately exercise jurisdiction over the foreign defendants. By proving that the district court had personal jurisdiction over the foreign defendants, the Villars argue that they established that complete diversity did not exist. Without complete diversity, the district court would not have subject matter jurisdiction over the case, and, they argue, the district court would have had to remand the case to state court. The Villars are incorrect. The district court could not have exercised personal jurisdiction over the foreign defendants.

In a diversity case, a district court may exercise personal jurisdiction over a foreign defendant if the long arm statute of the state in which it sits allows the exercise of jurisdiction, and the exercise of jurisdiction is constitutional. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987). Because the Texas long arm statute grants Texas courts the power to exercise jurisdiction whenever constitutional, the sole question before the district court was whether the district court could constitutionally exercise jurisdiction over the foreign defendants. *Aviles v. Kunkle,* 978 F.2d 201, 204 (5th Cir.1992); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990).[5]

The Due Process Clause of the Constitution limits a court's power to exercise personal jurisdiction over a non-resident defendant to instances where the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 312,

---

[4]In the Villars' prior discovery, they learned that CMC had an office in Texas, and that GTO used to have an office in Texas. Benton Musslewhite, the Villars' current attorney, conducted several of the depositions in California. Thus, he has personal knowledge of the Villars' attempts to ascertain the defendants' ties to Texas.

[5]The Texas long arm statute allows Texas courts to exercise jurisdiction over anyone that does business in Texas. Tex.Civ.Prac. & Rem.Code.Ann. § 17.042 (Vernon 1986). This grant of jurisdiction is so broad that it extends as far as the constitution permits. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990).

316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal cites omitted).

The minimum contacts the constitution requires depend on whether the court is asserting specific or general jurisdiction over the defendant. Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum and the plaintiff's injury relates to the defendant's contacts with the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Specific jurisdiction does not apply in this case because the Villars' injury does not relate to the defendants' contacts with Texas. General jurisdiction, on the other hand, applies when the forum has no direct interest in the underlying dispute, but it does have an interest in the defendant because the defendant has continuing and systematic contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Thus, to establish general personal jurisdiction over the defendant, the plaintiff must prove that the defendant has more substantial contacts with the forum. *Jones,* 954 F.2d at 1068.

The Villars, however, do not even suggest that the foreign defendants have any direct contacts with Texas. Instead, the Villars argue that we can attribute CMC's contacts with Texas to the foreign defendants in order to satisfy the minimum contacts requirement.[6] Relying on the fact that CMC and the foreign defendants are related, the Villars contend that we should disregard the corporate fiction.[7] Texas law provides three broad theories under which a court may disregard the corporate fiction and pierce the corporate veil. We may pierce the corporate veil "when: 1) the

---

[6]The Villars also note that GTO had an office in Texas at the time of the accident. The Villars suggest that this contact with Texas should satisfy the constitution's minimum contacts requirement. The Villars argue that the defendants have not shown that GTO discontinued its Texas activities for legitimate business reasons. This argument is frivolous. GTO ended its Texas activities long before the Villars instituted the instant suit and there is no reason to believe GTO ended its Texas contacts for an illegitimate reason.

[7]The Villars note that a court could constitutionally exercise personal jurisdiction over a subsidiary corporation if the subsidiary's parent had systematic contacts with the forum and the parent acted as an agent for the subsidiary. The Villars, thus, imply that CMC's Texas contacts satisfy the constitution's minimum contacts requirement because CMC was an agent for the foreign corporations. This argument is without merit, and the Villars do not even include in their brief the standard for establishing an agency relationship under Texas law. Indeed, there are no facts in the record that suggest that CMC ever acted as an agent for the foreign corporations. In addition, the Villars do not appear to have raised this argument below because the district court did not address this argument in its opinion.

corporation is the alter ego of its owners or shareholders, 2) the corporation is used for illegal purposes, and 3) the corporation is used as a sham to perpetrate a fraud." *Fed. & Dep. Co. v. Commercial Cas Consultants,* 976 F.2d 272, 274-275 (5th Cir.1992) (internal cites omitted). The purpose of all of these theories is to prevent the corporation's owners from using the "corporate entity as a cloak for fraud or illegality or to work an injustice." *Id.*[8]

The district court based its decision not to disregard the corporate fiction on the following facts. Mr. Villar worked for SATOL, a Saudi Arabian corporation. At the time of the accident, GTO owned 60 percent of SATOL, and CMC owned one-third of GTO. Thus, CMC only owned, indirectly, 20 percent of SATOL. CMC did not dominate either GTO or SATOL, and CMC was connected with only two of SATOL's eight directors. On the contrary, SATOL's other shareholders had veto power over SATOL's activities because each owner controlled at least one of SATOL's directors, and SATOL could not act without the unanimous agreement of its board of directors. Moreover, SATOL had a separate existence from its shareholders and maintained its corporate formalities. The district court found no evidence of fraud, illegality, or injustice. We only review the district court's factual findings to ensure that they are not clearly erroneous. Fed.R.Civ.P. 52(a).[9] The record fully supports these factual findings and, thus, we must affirm them.

Unfortunately for the Villars, the facts in the record do not support the Villars' attempt to disregard the corporate fiction on any theory that Texas recognizes. Indeed, the Texas courts and the Fifth Circuit have refused to disregard the corporate entity on facts that were much stronger than those the Villars rely on. *See Dalton v. R & W Marine, Inc.,* 897 F.2d 1359 (5th Cir.1990);

---

[8] In their effort to disregard the corporate veil, the Villars rely on *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986), a case that was legislatively overruled four years ago. *See* Tex.Bus.Corp.Act.Ann. (West Supp.1992); *Fed. & Dep.,* 976 F.2d at 275; *Farr v. Sun World Sav. Ass'n.,* 810 S.W.2d 294 (Tex.App.1991).

[9] The Villars also complain that the district court disregarded John Runion's affidavit. The district court found that Runion's affidavit contained blatant misrepresentations and that it was wholly improper and untrustworthy. The district court further found that the Runion affidavit was strewn with unsupported legal conclusions despite the fact and Mr. Runion is not a lawyer. The Villars' argument misperceives our role as an appellate court. It was up to the district court to determine what weight to give Mr. Runion's affidavit. Fed.R.Civ.P. 52(a). Finding the affidavit untrustworthy, the district court gave the affidavit no weight at all. Because the district court's decision was not clearly erroneous, we will not disturb it.

*Hargrave v. Fiberboard Corp.,* 710 F.2d 1154 (5th Cir.1983); *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 374-376 (Tex.1984). Accordingly, the district court did not err when it refused to disregard the corporate fiction. As a result, we cannot attribute CMC's Texas contacts to the foreign defendants. Without CMC's Texas contacts, the foreign defendants did not have the minimum contacts with Texas that the constitution requires for the district court to exercise jurisdiction over the foreign defendants. Thus, we hold that the district court did not err when it dismissed the foreign defendants for lack of personal jurisdiction.[10]

D

The Villars also contend that the district court should have remanded the proceeding to state court instead of dismissing their claims against CMC on grounds of *forum non conveniens.* In support of this argument, the Villars cite several cases that might suggest that the district court had discretion to remand the case instead of dismissing it. *See Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Murray v. Union Pac. Ry. Co.,* 77 F.Supp. 613 (N.D.Ill.1948).

Even if the district court had discretion to remand the case, nothing in the record suggests that the district court abused its discretion. Furthermore, in a similar case, we found that the district court did not abuse its discretion when it dismissed the case instead of remanding it to state court. *Nolan v. Boeing Co.,* 919 F.2d 1058, 1070 (5th Cir.1990). In *Nolan,* we reasoned that "[i]t would to anomalous to conclude that while a district court may properly invoke the federal law of *forum non conveniens* to decline jurisdiction over a properly removed case, it must order the case to be reinstituted in an equally if not more inconvenient forum." *Id.* We agree. The district court did not abuse its discretion when it chose to dismiss the Villars' claims against CMC instead of remanding the

---

[10]Even assuming the foreign defendants had sufficient Texas contacts as argued by the Villars, the district court correctly dismissed the foreign defendants for lack of personal jurisdiction because the exercise of general personal jurisdiction over them would "offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. It would simply be unfair to exercise personal jurisdiction over the foreign defendants when 1) Texas has no interest in this suit, 2) the dispute involves foreign law and foreign parties, and 3) it would be extremely burdensome for the foreign defendants to come to the United States to defend this suit. *See Asahi Metal Ind. Co. v. Superior Ct. of Cal., Solano City,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1986).

proceeding.

E

We now turn to the Villars' argument that the district court erred when it dismissed their claims against CMC on grounds of *forum non conveniens.* The district court held that, because of the two dismissals on grounds of *forum non conveniens* in California, *res judicata* barred the Villars from arguing that the district court should not dismiss their suit on grounds of *forum non conveniens.* Alternatively, the district court examined the merits of CMC's motion and determined that it should dismiss the Villars' claims against CMC on grounds of *forum non conveniens.*

The Villars contend that the issue of *forum non conveniens* should not be *res judicata* because the two California courts applied federal *forum non conveniens* law, and because circumstances have changed since the first two dismissals. The Villars further contend that a *forum non conveniens* issue can never be *res judicata* because of the Supreme Court's opinion in *Parsons v. Chesapeake & Ohio Ry. Co.,* 375 U.S. 71, 73, 84 S.Ct. 185, 187, 11 L.Ed.2d 137 (1963). In *Parsons,* the Supreme Court held that "a prior state court dismissal on the ground of *forum non conveniens* never can serve to divest a federal district judge of the discretionary power vested in him by Congress to rule upon a motion to transfer under § 1404(a)." *Id.*

The Villars' interpretation of the law is incorrect. Because the *Parsons* case involved only a prior state court *forum non conveniens* dismissal, the case is not on point. We have already held that a plaintiff may not relitigate a *forum non conveniens* issue unless he can show some "objective facts that materially alter the considerations underlying the previous resolution." *Exxon Corp. v. Chick Kam Choo,* 817 F.2d 307, 314 (5th Cir.1987) (rev'd on other grounds 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988)). In the last ten years, the underlying facts have not materially changed. Thus, the prior decisions bar the Villars from relitigating this issue.

Furthermore, examining the merits of CMC's argument, we believe that the district court did not err when it granted the motion. We review a district court's decision to dismiss a case based on *forum non conveniens* to ensure that the district court did not act unreasonably or arbitrarily. *Nolan,* 919 F.2d at 1068.

Contrary to the Villars' assertion, the district court properly applied federal *forum non conveniens* law when it addressed CMC's motion. *Nolan,* 919 F.2d at 1068 n. 11; *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987) (en banc) (vacated on other grounds *Pan Am World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, affirmed in relevant part 883 F.2d 17 (1989)). The factors a district court must consider before dismissing a case based on *forum non conveniens* have not changed since the Ninth Circuit dismissed the Villars' case. *Villar,* 782 F.2d at 1482-1483. The Ninth Circuit correctly concluded that the Villars' case should be dismissed based on *forum non conveniens.* The Ninth Circuit found that no forum in the United States was convenient. We agree. If anything, Texas is less convenient than California because CMC has its headquarters in California and not Texas. We, therefore, conclude that the district court did not act unreasonably or arbitrarily when it dismissed the Villars' claims against CMC on grounds of *forum non conveniens.*

F

We now address the Villars' contention that the district court erred in enjoining them from filing another suit in the United States. We review the district court's decision to grant an injunction for an abuse of discretion. *United States v. Paradise,* 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987). The Villars rely on the Supreme Court's holding in *Chick Kam Choo* that, pursuant to the Anti-Injunction Act, we cannot enjoin an ongoing state court proceeding. *See* 28 U.S.C. § 2283. Yet, *Chick Kam Choo* is not on point because there is no ongoing state court proceeding in this case.

On the contrary, as long as the federal court acts before the plaintiff has commenced the state court proceeding, a federal court can enjoin a state court. *See Dombrowski v. Pfister,* 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965) ("This statute [the anti-injunction act] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted."); *Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 842 n. 6 (1st Cir.1988) ("The Anti-injunction Act does not, in any event, bar injunctive relief that would run against a state court—as in effect, would the relief ordered here—when the federal court's injunctive power is *invoked* (i.e., requested) by the plaintiff before the state court action is commenced.")

(internal cited omitted).

Similarly, federal courts have the power to enjoin plaintiffs who abuse the court system and harass their opponents. Indeed, federal courts have broad powers to protect their judgments and the integrity of the courts as a whole. *In re Martin-Trigona,* 737 F.2d 1254, 1262 (2d Cir.1984). In one case, we held that the district court had the power to enjoin "any future litigation on any cause of action arising from the fact situation at issue in [the] case." *Harrelson v. United States,* 613 F.2d 114, 116 (5th Cir.1980). In another case, the D.C. Circuit permanently enjoined a civil litigant from filing an action in any federal court without prior permission of the court. *Urban v. United Nations,* 768 F.2d 1497, 1500 (D.C.Cir.1985). Other courts have reached the similar conclusions. *See Castro v. United States,* 775 F.2d 399, 408-409 (1st Cir.1985) (plaintiff enjoined from filing additional pleadings and from relitigating any matter set forth in the case); *Ruderer v. United States,* 462 F.2d 897 (8th Cir.1972).

In the case before us, the district court found that further litigation in the United States could serve no purpose other than to vex and harass the defendants. The district court explicitly found, like the Ninth Circuit before it, that no court in the United States would be convenient. The record fully supports these findings. Federal courts have repeatedly urged the Villars' to sue in the Philippines. Nonetheless, the Villars continue to bring these frivolous suits in the United States. The Villars seem determined to pursue this abusive litigation in federal courts until ordered to stop. Under these circumstances, it was appropriate for the district court to enjoin the Villars from bringing any future litigation based on the underlying facts in this case, including future litigation in state courts.

G

Finally, we consider whether the district court erred when it sanctioned the Villars' attorneys for making unreasonable arguments and for failing to make a reasonable inquiry into the facts.[11] We review the district court's Rule 11 sanctions to determine whether the district court abused its discretion. *Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359

---

[11]On appeal, the Villars' attorneys devote only one paragraph of their brief to the issue of sanctions and they do not contest the amount of the sanctions.

(1990); *Thomas v. Capital Sec. Serv. Inc.,* 836 F.2d 866 (5th Cir.1988) (en banc). The district court found that the Villars' attorneys asserted illogical, unreasonable arguments and miscited case law.

We hold that the district court did not abuse its discretion when it sanctioned the Villars' attorneys. The Villars' attorneys made numerous frivolous arguments before the district court; indeed, they continued to assert several of these arguments on appeal. In the district court they argued that the alien defendants are subject to personal jurisdiction in Texas because they were the "alter ego" of CMC. The facts in this case do not remotely support this contention. To bolster their *alter ego* argument, they relied on *Castleberry,* 721 S.W.2d at 270, despite the fact that this case had been legislatively overruled four years earlier. *See* footnote 8, *supra.* The Villars' attorneys also argued that the district court should ignore our holding in *Walker,* 335 F.2d at 536, even though we recently had reaffirmed that decision. Similarly, they argued that the district court should apply state *forum non conveniens* law notwithstanding our recent decisions clearly to the contrary in *In re Crash Disaster,* 821 F.2d at 1147, and *Nolan,* 919 F.2d at 1068.

In addition, the Villars' attorneys relied heavily on the Runion affidavit even though it contained blatant misrepresentations. The district court concluded that:

> As noted above, the Runion affidavit, besides being wholly improper and unsatisfactory, contains blatant misrepresentations of deposition testimony. At the very best, Plaintiffs' counsel has relied on an easily discoverable falsehood and that should have been discovered in the exercise of reasonable care and diligence. At worst, Plaintiffs' counsel has conspired with Mr. Runion in a deliberate attempt to mislead the court.

This factual finding is not clearly erroneous and, thus, we must accept it. This factual finding alone fully supports the district court's sanctions because, pursuant to Rule 11, an attorney must make a reasonable inquiry into the facts before submitting a document to the court. *See Thomas,* 836 F.2d at 873-874 (We held that attorneys have an affirmative obligation to conduct "a reasonable inquiry into the facts which support the document.")

## IV

For all of the foregoing reasons, we AFFIRM the decision of the district court.

AFFIRMED.

JOHNSON, Circuit Judge, concurring in part, dissenting in part:

This writer concurs in part III-A of the majority's opinion.  However, in my view, the Court should remand this case for the allowance of discovery on the jurisdiction and *forum non conveniens* issues.  By failing to reverse and remand, the majority—without explanation or authority[1]—reverses well-settled and well-reasoned Fifth Circuit law.  This dissent is therefore tendered.

The majority opinion states that "[t]he Villars also contend that the district court erred when it denied them *additional* discovery."  *Villar, supra* at ---- (emphasis added).  However, the record, the briefs, the district court's opinion and counsel for the parties, themselves, all acknowledge that there has been *absolutely no* discovery in the case *sub judice.*  While it is true that the parties engaged in discovery with respect to a *forum non conveniens* issue *ten years ago* in a California case, it is quite elementary that personal jurisdiction analysis and *forum non conveniens* analysis are completely different.

Evaluating personal jurisdiction in Texas requires courts to review the relationship between the defendant and the forum state to determine whether sufficient purposeful contacts exist and to ensure that traditional notions of "fair play and substantial justice" would not be offended by haling the defendant into court.  *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 109, 113, 107 S.Ct. 1026, 1030-31, 1033, 94 L.Ed.2d 92 (1987);  *Command-Aire Corp. v. Ontario Mechanical Sales and Service Incorporated,* 963 F.2d 90, 94 (5th Cir.1992).

However, in *forum non conveniens* cases, courts do not look at contacts between the defendant and the state.  The ultimate inquiry in *forum non conveniens* cases is convenience—not minimum contacts and not fair play and substantial justice.  *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947);  *Command-Aire,* 963 F.2d at 95;  *In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982,* 821 F.2d 1147, 1163 (5th Cir.1987) (*en banc* ).  With respect to *forum non conveniens* issues, courts are to

---

[1]This Court has consistently adhered to the policy that a panel may not overrule a prior panel's decision, unless an intervening *en banc* or Supreme Court decision specifically or practically overruled the earlier opinion.  *Umphlet v. Connick,* 815 F.2d 1061, 1063 (5th Cir.1987).  Here, the majority attempts to overrule, not only past Fifth Circuit panel decisions, but also a Fifth Circuit *en banc* decision.

first determine whether a more convenient forum exists. If such a forum is available, courts are then, and only then, to balance private interests with public interests.[2] *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981); *Command-Aire,* 963 F.2d at 95.

Based upon the factors considered in personal jurisdiction and *forum non conveniens* analyses, it should be patently clear that discovery on one issue is not tantamount to discovery on the other. Indeed, the United States Supreme Court acknowledged in its seminal *forum non conveniens* opinion, *Gulf Oil Corp. v. Gilbert,* that *forum non conveniens* issues arise when courts, which actually have jurisdiction over the parties, find that exercising that jurisdiction would cause substantial inconvenience. 330 U.S. at 507, 67 S.Ct. at 842 ("a court may resist imposition upon its jurisdiction even when jurisdiction is authorized"). Thus, even if the discovery conducted by the Villars were recent—and there surely can be no question but that ten-year-old discovery is, in no way, recent—the *forum non conveniens* discovery conducted in California is wholly and completely insufficient for properly determining whether the alien defendants are subject to personal jurisdiction in Texas.

Hence, the emperor is found out. He really has no clothes—the Villars were denied jurisdictional discovery. It is now beyond dispute that discovery may be used for jurisdictional purposes.[3] *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389, 57

---

[2]In analyzing the private interests courts are to consider: 1) the parties' access to sources of proof, 2) the availability of compulsory process for obtaining the attendance of unwilling witnesses, 3) the costs of obtaining the attendance of willing witnesses, 4) the ability to view the premises, if necessary, and 5) the existence of other practical problems which may interfere with expeditious and inexpensive judicial review of the case. Courts should also determine whether a judgment, if entered, would be enforceable. *In re Air Crash Disaster,* 821 F.2d at 1162 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1957)).

In analyzing the public interests, courts are to consider 1) the administrative problems which flow from court congestion, 2) the interest in having localized controversies resolved at home, 3) the interest in having a court which is familiar with the applicable law to handle the case, and 4) the unfairness in burdening citizens with jury duty in a case which is unrelated to the forum. Courts should also consider whether conflicts of law issues will arise and whether foreign law applies. *In re Air Crash Disaster,* 821 F.2d at 1162-63 (quoting *Gulf Oil Corp.,* 330 U.S. at 508-09, 67 S.Ct. at 843).

[3]In *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* the United States Supreme Court determined that discovery into jurisdictional matters is so important that a defendant's failure to comply therewith allows the district court to sanction the defendant by assuming that personal jurisdiction exists. 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The Court explained:

L.Ed.2d 253 (1978).

This Court has often dealt with jurisdictional discovery, and until today, Fifth Circuit law was well-settled that when a diligent plaintiff presented a non-frivolous claim of jurisdiction and requested jurisdictional discovery, the district court was required to allow that discovery.[4] *Blanco v. Carigulf Lines,* 632 F.2d 656, 657 (5th Cir.1980) (asserting that "[t]his court has held that where the record left in doubt questions upon which jurisdiction could be based plaintiff ... had the right to employ interrogatories to develop fully the necessary facts"); *Skidmore v. Syntex Laboratories, Inc.,* 529 F.2d 1244, 1248-49 (5th Cir.1976) (After the plaintiffs had propounded and received responses to 184 interrogatories and after the plaintiffs had had eight months in which to engage in discovery, this Court still held "that the district court acted too drastically in entering its order of dismissal without giving the plaintiff a further opportunity for discovery."); *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.) (*en banc* ), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973) (reversing the denial of jurisdictional discovery even though the plaintiff had agreed in writing that discovery would not take place until after the district court ruled on the defendants' motions to dismiss); *Davis v. Asano Bussan Co.,* 212 F.2d 558, 564-65 (5th Cir.1954) (holding that "[t]he plaintiff was not required to rely exclusively on affidavits furnished by the defendants for answer to that question [of personal jurisdiction], but *had a right to employ interrogatories to develop* [the jurisdictional question] *fully* " and asserting that "the district court ... *should have received the complete information called for by the interrogatories before entering final judgment* " (emphasis

> Having put the issue [of personal jurisdiction] in question, petitioners did not have the option of blocking the reasonable attempt of CBG [the plaintiff] to meet its burden of proof.... Because of petitioners' [the defendants'] failure to comply with the discovery orders, CBG was unable to establish the full extent of the contacts between petitioners and Pennsylvania, the critical issue in proving personal jurisdiction.

*Id.* at 709, 102 S.Ct. at 2107.

[4]This Court has upheld the dismissal of cases on jurisdictional grounds when there has been no discovery only when the plaintiff had opportunities to engage in jurisdictional discovery but chose not to fully avail himself of that opportunity, *Singletary v. B.R.X., Inc.,* 828 F.2d 1135, 1137-38 (5th Cir.1987), or when the plaintiffs' jurisdictional claims were frivolous. *Wyatt v. Kaplan,* 686 F.2d 276, 284 (5th Cir.1982); *Washington v. Norton Manufacturing, Inc.,* 588 F.2d 441, 445 (5th Cir.1979).

added)). *See Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (deciding, "It is true that the factual determinations decisive of a motion to dismiss for lack of jurisdiction are within the court's power.... But still the district court *must give the plaintiff an opportunity for discovery and for a hearing* " (emphasis added)); *Chatham Condominium Associations v. Century Village, Inc.,* 597 F.2d 1002, 1012 (5th Cir.1979) (deciding that "dismissal for lack of subject matter jurisdiction prior to trial, and *certainly prior to giving the plaintiff ample opportunity for discovery,* should be granted sparingly"); *see also Singletary,* 828 F.2d at 1137 (stating that "[i]n an appropriate case, we will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery" (quoting *Wyatt,* 686 F.2d at 283)).

The Fifth Circuit is not the only court which has determined that diligent plaintiffs who present non-frivolous claims of jurisdiction have a right to engage in jurisdictional discovery. Such is the rule, not only in other federal circuit courts, but also in a number of state courts.[5]

In this case, the question of jurisdiction was altogether unclear. The district court acknowledged that GTO, an alien defendant, once maintained an office in Texas and that vessels owned by one or more of the alien defendants pass through Texas ports. However, the court went on to determine that since the record showed nothing more, it would dismiss all of the claims against the alien defendants for lack of personal jurisdiction. However, a patent flaw exists in the district court's, and therefore the majority's, logic: The record showed no other jurisdictional facts because

---

[5]*Boit v. Gar-Tec Products, Inc.,* 967 F.2d 671, 681 (1st Cir.1992); *Edmond v. U.S. Postal Service General Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991); *Crane v. Carr,* 814 F.2d 758 (D.C.Cir.1987); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 729 (11th Cir.1982); *Wells Fargo and Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 431 n. 24 (9th Cir.1977); *Lekkas v. Liberian M/V Caledonia,* 443 F.2d 10, 11 (4th Cir.1971); *Fraley v. Chesapeake and Ohio Ry Co.,* 397 F.2d 1, 3 (3d Cir.1968); *Surpitski v. Hughes-Keenan Corp.,* 362 F.2d 254, 255 (1st Cir.1966); *Gleneagle Ship Management Co. v. Leondakos,* 602 So.2d 1282, 1284 (Fla.1992); *Hart Holding Co. v. Drexel Burnham Lambert Inc.,* 593 A.2d 535, 540 (Del.Ch.1991); *Amigo Foods Corp. v. Marine Midland Bank-New York,* 39 N.Y.2d 391, 384 N.Y.S.2d 124, 126-27, 348 N.E.2d 581, 583 (1976); *Peterson v. Spartan Industries, Inc.,* 33 N.Y.2d 463, 354 N.Y.S.2d 905, 908 and n. 2, 310 N.E.2d 513, 515 and n. 2 (1974); *see also* 4 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.56[6] (2d ed. 1991) (relating that "[i]n cases in which jurisdiction depends upon complicated facts, however, it has been held that it is error to grant a motion to dismiss without affording the plaintiff an opportunity for discovery").

the district court prohibited the Villars from engaging in jurisdictional discovery.

This flaw also exists in the district court's and the majority's *forum non conveniens* analysis. The majority correctly states that a prior *forum non conveniens* determination precludes a later *forum non conveniens* determination unless the plaintiff can point to facts which changed materially after the initial determination. *See Exxon Corp. v. Chick Kam Choo,* 817 F.2d 307, 314 (5th Cir.1987), *rev'd on other grounds,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). The majority also states that "[i]n the last ten years, the underlying facts have not materially changed." *Villar,* supra at ----. However, this Court actually *does not know* whether the facts have changed materially. It is true that the record reveals no such changes, but it is also true that, again, the plaintiffs were prevented from making such a showing because the district court precluded any and all discovery in this case. Nevertheless, the majority holds that the plaintiffs' failure to do that which the district court prevented them from doing—finding and pointing out jurisdiction and *forum non conveniens* facts—is their ultimate downfall.

In my view, the majority's holding countenances the resolution of contested jurisdiction questions based upon conjecture, not fact. Justice Holmes, writing for the Supreme Court, advised that when courts determine whether personal jurisdiction exists, "great caution should be used not to let fiction deny the fair play that can be secured *only by a pretty close adhesion to fact.*" *McDonald v. Mabee,* 243 U.S. 90, 91, 37 S.Ct. 343, 343-44, 61 L.Ed. 608 (1917) (emphasis added). Nevertheless, the majority has thrown "caution," along with well-settled Fifth Circuit law, to the wind. As this Court properly announced almost forty years ago, "[t]he clearing of court dockets is one of the desiderata in the judicial function. But it should not be allowed to become a fetish for it does not rank with the *raison d'être* of courts[ ]—the administration of justice *based upon a full and fair disclosure of the facts.*" *Slagle v. United States,* 228 F.2d 673, 679 (5th Cir.1956) (emphasis added).

Today, the majority ignores *Slagle* and a host of other Fifth Circuit precedent. I, therefore, respectfully dissent.