MEMORANDUM OPINION AND ORDER
 

 ORLANDO L. GARCIA, District Judge.
 

 Before the Court is a motion to dismiss (Doc. No. 3) filed by defendants Pet Productions, Inc. (“Pet”) and Penthouse International, Ltd. (“Penthouse”) seeking to dismiss the petition of plaintiff Glenn L. Williams. Penthouse has also filed a motion to dismiss defendant/cross-plaintiff Richard L. Wilson’s cross-petition (Doc. No. 17). In both motions Penthouse and Pet raise the same grounds: (1) lack of personal jurisdiction over defendants); (2) improper venue due to a forum selection clause in the contract sought to be enforced; and (3) failure to state a claim upon which relief can be granted. Penthouse
 
 *546
 
 adds a fourth ground in its motion, namely that Wilson has failed to plead specific facts with particularity in support of its alter ego theory against Penthouse.
 

 This suit was filed by Williams in the 285th Judicial District Cóurt of Bexar County. Penthouse and Pet removed the suit to this Court, although co-defendants Wilson and International Celebrity Showclubs, Inc. (“ICS”) did not join in the removal. Pet and Penthouse argue that the joinder of their co-defendants is not fatal to the motion to remove because Wilson and ICS should be realigned as plaintiffs. Wilson, ICS, and Williams dispute this argument. Plaintiff Williams and defendants Wilson and ICS have filed motions to remand. (Doc. Nos. 9, 11, and 12).
 

 The Court held in abeyance the motions to dismiss, the motions to remand, and a request to realign the parties to allow discovery limited to the issue of this Court’s personal jurisdiction over Pet and Penthouse. That discovery has been completed, and the parties have briefed the issues of personal and removal jurisdiction and proper venue.
 

 Penthouse is in the magazine publishing business, and its most successful publication is
 
 Penthouse, the International Magazine for Men (“Penthouse”).
 
 Wilson first approached Penthouse with the concept of using Penthouse trademarks, Penthouse models (called “Pets”), and magazine promotions in a chain of adult nightclubs. Following four years of negotiations, Wilson and Pet entered into a Territorial Developer Agreement (“TDA”) which granted Wilson the exclusive right to designate business entities to operate Penthouse nightclubs throughout North America. Pet is an affiliate of Penthouse. The TDA specifies that it is to be governed by New York law and that any suits are to be brought in New York courts. The parties discussed various plans regarding development of nightclubs throughout the United States, and specifically in Texas. The TDA recognized the value of using Penthouse trademarks, Pets, and
 
 Penthouse
 
 magazine promotions in the adult nightclub business for the mutual benefit of the parties. A monthly licensing fee was to be paid by each club for the use of the Penthouse trademarks.
 

 The TDA contains a model licensing agreement, titled the Standard Licensing Agreement (“SLA”), which was to be the specific licensing agreement between Pet and each operator of a Penthouse nightclub. Pet was to enter into an SLA with each operator designated by Wilson, provided that the city in which the proposed club was to be operated was approved by Penthouse. It was also Wilson’s responsibility pursuant to the TDA to obtain financing for the clubs from outside investors, who would be subject to the approval of Penthouse. The TDA gave Wilson one year to open the first club, otherwise the agreement would automatically terminate.
 

 Penthouse initially approved San Antonio, Texas as the location for the first nightclub. Wilson and Williams began preparations for the opening of the club including obtaining a building, a certificate of occupancy from the city, and a permit to sell alcoholic beverages. They also formally requested approval from Penthouse of Williams as an investor and for the use of Penthouse trademarks in the nightclub. Penthouse refused, and Williams and Wilson were unable to open the San Antonio nightclub.
 

 Williams filed suit in state court against Wilson and ICS to recover $8000 loaned to Wilson’s company, ICS, to meet expenses in developing the club. The loan is reflected in a promissory note. Wilson is a Florida resident and ICS is a Florida corporation. Williams also sued Penthouse, a New York corporation, and Pet, a Delaware corporation. The principal place of business of both corporations is New York. Williams sued as a third-party beneficiary under the TDA, and sought to compel Penthouse and Pet to enter into an SLA with him to open and operate a Penthouse nightclub in San Antonio.
 

 Wilson answered and filed a cross-claim against Penthouse for breach of the TDA and for specific performance to require Penthouse to enter into an SLA with him.
 

 Penthouse and Pet move to dismiss Williams’ petition and Wilson’s cross-claim. Their primary argument is that this Court lacks personal jurisdiction over them. When
 
 *547
 
 confronted with both a motion to dismiss for lack of personal jurisdiction and a motion to remand, the court may rule on the former before reaching the latter.
 
 Villar v. Crowley Maritime Corp.,
 
 990 F.2d 1489, 1494 (5th Cir.1993),
 
 cert. denied,
 
 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994).
 

 The Texas long-arm statute reaches to the limits of due process.
 
 Hall v. Helicopteros Nacionales De Colombia,
 
 S.A., 638 S.W.2d 870, 872 (Tex.1982),
 
 rev’d on other grounds,
 
 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The requirements of the Due Process Clause are satisfied if the nonresident defendant has sufficient minimum contacts with the forum state so that the suit does not offend “traditional notions of fair play and substantial justice.”
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Thus, “the nonresident must have some minimum contact with the forum which results from an affirmative act on his part ... [and] it must be fair and reasonable to require the nonresident to defend the suit in the forum state.”
 
 Stuart v. Spademan, 772
 
 F.2d 1185, 1189 (5th Cir.1985). In evaluating these contacts, it must be determined “whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.”
 
 Bearry v. Beech Aircraft Corp.,
 
 818 F.2d 370, 374 (5th Cir. 1987) (citing
 
 Hanson v. Denckla,
 
 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).
 

 In personam jurisdiction may be established in either of two manners, usually referred to as “specific jurisdiction” and “general jurisdiction.”
 
 See Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985). To establish specific jurisdiction, the plaintiff must show that the “litigation results from injuries that ‘arise out of or relate to’ ” the defendant’s contacts with the forum state.
 
 Burger King,
 
 471 U.S. at 472, 105 S.Ct. at 2182 (quoting
 
 Helicopteros Nacionales,
 
 466 U.S. at 414, 104 S.Ct. at 1872). To establish general jurisdiction, there must be a showing of “continuous and systematic” contacts with the forum state.
 
 Helicópteros Nacionales,
 
 466 U.S. at 415-16, 104 S.Ct. at 1872-73. Contacts of a more “extensive quality and nature” than those required for specific jurisdiction are necessary.
 
 See Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.,
 
 963 F.2d 90, 94 (5th Cir.1992).
 

 The burden of establishing personal jurisdiction over the nonresident defendant rests on the plaintiff.
 
 Jones v. Petty-Ray Geophysical Geosource, Inc.,
 
 954 F.2d 1061, 1067 (5th Cir.),
 
 cert. denied,
 
 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). If the issue is to be decided on the basis of facts contained in the parties’ affidavits, however, the party who bears the burden need only present a prima facie case for personal jurisdiction; proof by a preponderance of the evidence is not required.
 
 Id.; D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,
 
 754 F.2d 542, 545-46 (5th Cir.1985). Uncontroverted allegations in the plaintiffs complaint must be taken as true, and conflicts between the facts contained in the parties’ affidavits must be resolved in the plaintiffs favor.
 
 Jones,
 
 954 F.2d at 1067;
 
 D.J. Investments,
 
 754 F.2d at 546.
 

 I. Personal Jurisdiction
 

 A. Penthouse
 

 1. Specific Jurisdiction.
 

 While Wilson was seeking approval to open the nightclub, Penthouse requested that Williams send materials from Texas to New York pertinent to his qualifications as an investor. Penthouse also requested that Wilson send other materials from Texas to New York concerning the proposed club location. Penthouse initially approved San Antonio as the site of the first club, but later withdrew that approval and refused to license its trademarks for use in the San Antonio club.
 

 Specific jurisdiction can be exercised over a foreign defendant when the lawsuit arises from or relates to the defendant’s contact with the forum state.
 
 Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,
 
 9 F.3d 415, 418-19 (5th Cir.1993). One act by the defendant could confer personal jurisdiction if that act gives rise to the claim.
 
 Id.
 
 That
 
 *548
 
 one act, however, must be one by which the foreign defendant “purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.”
 
 Burger King,
 
 471 U.S. at 475, 105 S.Ct. at 2183. Such “purposeful availment” must be such that the defendant “should reasonably anticipate being haled into court” in the forum state.
 
 Asahi Metal Indus. Co. v. Superior Court,
 
 480 U.S. 102, 110, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987).
 

 The Fifth Circuit has consistently held that the exchange of communications between a party in the forum state and a party in another state in the development of a contract is insufficient to confer jurisdiction over a non-resident in a breach of contract suit.
 
 Stuart,
 
 772 F.2d at 1193-94;
 
 Patterson v. Dietze, Inc.,
 
 764 F.2d 1145, 1147 (5th Cir. 1985);
 
 Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,
 
 700 F.2d 1026, 1029 (5th Cir. 1983),
 
 cert. denied,
 
 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). Moreover, in each of those cases the non-resident’s contacts were much more significant than in the present case. For example, in each case a contract was consummated with a Texas resident, and in each the non-resident mailed payments due under the contract to the Texas residents in Texas. Also, in
 
 Hydro kinetics,
 
 the non-residents traveled to Texas during negotiations, again to close the deal, and again after the deal was consummated. 700 F.2d at 1029.
 

 In contrast, the only Texas resident in this suit is Williams, and he has no contractual relationship with either Penthouse or Pet. Williams’ claims against Penthouse and Pet are as a third-party beneficiary under the TDA. The TDA, however, expressly provides that there are no third-party beneficiaries, and this provision is controlling.
 
 Talman Home Fed. Sav. & Loan Ass’n v. American Bankers Ins.,
 
 924 F.2d 1347, 1351 (5th Cir.1991). The same rule applies under New York law.
 
 Morse/Diesel, Inc. v. Trinity Indus., Inc.,
 
 859 F.2d 242, 249 (2d Cir.1988).
 

 It is significant that Penthouse, which did not regularly engage in business in Texas other than to sell its magazines here, was approached by Wilson.
 
 See Hydrokinetics,
 
 700 F.2d at 1029. The TDA was drafted primarily by Penthouse attorneys with some input from Wilson. It is also significant that the TDA specifically provides that New York law is to govern the agreement, and that the agreement is to be enforced in New York courts.
 
 See id.
 
 at 1029-30. Thus, Penthouse would not reasonably expect to be haled into Texas courts in a diversity suit if a question arose concerning enforcement of the TDA.
 

 Williams, Wilson, and ICS argue that the TDA created an ongoing contractual relationship in which Penthouse would be actively involved in marketing and promoting the clubs that would be opened in Texas. The marketing and promotional activities, however, are not the focus of this lawsuit, and Penthouse was not to be involved in the day-to-day operation of the club. Further, the TDA itself does not provide for performance in Texas any more than it provides for performance anywhere in North America; the TDA contemplated the development of nightclubs across North America. This does not mean that Penthouse and Pet reasonably expect to be haled into court anywhere in the country. What Williams, Wilson, and ICS are arguing is that Penthouse breached the TDA by failing to enter into a licensing agreement for their San Antonio club. The initial approval and subsequent rejection of the San Antonio site does not, in the face of the New York forum selection and choice of law provisions, establish a purposeful availment of the privilege of conducting business in Texas or an invocation of the benefits and protections of Texas law.
 

 Williams, Wilson, and ICS have failed show that Penthouse purposefully availed itself of the privilege of conducting business within Texas or invoked the benefits and protections of Texas law. Clearly, a non-resident can arrange its affairs so as to avoid being haled into court in a particular state.
 
 Stuart,
 
 772 F.2d at 1190. This is what Penthouse did.
 

 £.
 
 General Jurisdiction.
 

 Williams, Wilson, and ICS assert that for over twenty years Penthouse has
 
 *549
 
 had “continuous and systematic contacts” with Texas by circulating its monthly magazine to Texas newsstands and direct-mail subscribers. Williams, Wilson, and ICS also assert that Penthouse derives monthly revenues from sales of numerous other products in Texas. Injecting a “stream of commerce,” even an “enormous” stream, into a state through the sales of products is insufficient in and of itself to support a finding of continuous and systematic contacts on which general jurisdiction can be based.
 
 Bearry,
 
 818 F.2d at 375. Moreover, the same factors listed in
 
 Bearry
 
 that established the lack of general jurisdiction over the defendant apply equally to Penthouse: Penthouse is a New York corporation .with its principal place of business in New York; its facilities are located in New York; it has never qualified to do business nor maintained an agent for service of process in Texas; it has no telephone listing in Texas; it has no facilities in Texas; it has never had a bank account in Texas; it has never insured any person in Texas; it owns no real estate in Texas; it has no subsidiaries, divisions, agents, or affiliated operations in Texas; and it has no employees or directors who are permanently assigned to work in Texas.
 
 See Bearry,
 
 818 F.2d at 372.
 

 This is not a case like
 
 Keeton v. Hustler Magazine, Inc.,
 
 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In that case the petitioner, a resident of New York, sued Hustler, an Ohio corporation, in New Hampshire. Hustler’s only contacts with New Hampshire consisted of the sale of its magazines there, and those sales constituted only a small part of its monthly national circulation. The petitioner, however, alleged that she had been libeled in five separate issues of the respondent’s magazine. The Supreme Court held that the respondent’s regular circulation of magazines in the forum State was sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine.
 
 Id.
 
 at 773-74, 104 S.Ct. at 1478. In contrast, this is a pure contract case, not a tort case; tort cases are subject to a separate analysis.
 
 See D.J. Investments,
 
 754 F.2d at 549. Here, the cause of action is not based on the contents of
 
 Penthouse
 
 magazine. The only claim related to
 
 Penthouse
 
 — that its pages were to be used to promote the nightclubs envisioned in the TDA — is altogether too attenuated for an assertion of personal jurisdiction over Penthouse. As the Supreme Court noted in
 
 Keeton,
 
 if the respondent’s magazine sales were unrelated to the cause of action, they would be insufficient to warrant the exercise of personal jurisdiction.
 
 Id.
 
 at 779,104 S.Ct. at 1481.
 

 It thus appears that Penthouse’s only contacts with Texas involve the sales of its magazine and other unspecified products. These contacts are not of a continuous and systematic nature sufficient to invoke the general jurisdiction of a Texas court.
 

 B. Pet
 

 1. Specific Jurisdiction.
 

 Wilson asked that a ruling on Penthouse and Pet’s motions to dismiss be held in abeyance while the parties conducted discovery, in part, to determine whether Pet is the alter ego of Penthouse. In their most recent briefs, filed after that discovery has been conducted, the parties argue that Pet is a shell for Penthouse, which is the real party in interest. They argue that Pet has no employees, no office, no telephone, bank account, furniture, office equipment, assets, or liabilities. They assert that the only business activity it has engaged in during this decade is to execute the TDA at the direction and on the behalf of Penthouse. The argument apparently is that Pet’s corporate form should be disregarded and the Court therefore has jurisdiction over Pet to the extent it has jurisdiction over Penthouse.
 
 See, e.g., Villar,
 
 990 F.2d at 1496.
 

 First, the Court has already determined that it has no personal jurisdiction over Penthouse. Thus, even if Pet is nothing more than a shell or Penthouse’s agent, this will not cure the lack of personal jurisdiction over Penthouse.
 

 Further, the corporate veil may be disregarded only when the corporation is the alter ego of its owners or shareholders, the corporation is used for illegal purposes, and the corporation is used as a sham to perpetrate a fraud.
 
 Id.
 
 Williams, Wilson, and
 
 *550
 
 ICS have not attempted to show that Pet is used for either of the later two purposes.
 

 Nor have they shown that Pet is Penthouse’s alter ego. Both Penthouse and Pet are separate subsidiaries of General Media International, Ine., which is not a party to this litigation. For an entity to be the alter ego of another, at least one of the entities must own stock in the other.
 
 Permian Petroleum Co. v. Petroleos Mexicanos,
 
 934 F.2d 635, 643 (5th Cir.1991). Neither Penthouse nor Pet owns stock in the other corporation. Further, the evidence asserted to show Pet is a shell — that it has no address, telephone, bank account, etc. — is irrelevant. These types of factors may relate to whether a corporation has adhered to corporate formalities, but are irrelevant to a determination of alter ego liability.
 
 Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.,
 
 11 F.3d 65, 68, 69 (5th Cir.1994). What is relevant in a contract action is whether actual fraud has been shown.
 
 Id.
 
 at 68 n. 4. Williams, Wilson, and ICS have brought forth nothing to indicate that Penthouse or Pet were engaged in fraud.
 

 2. General Jurisdiction.
 

 Williams, Wilson, and ICS have not alleged that Pet has any systematic and continuous contacts with Texas, nor does Pet maintain a business presence in Texas. Therefore, the Court cannot exercise general jurisdiction over Pet.
 

 II. Motions to Remand
 

 Having concluded that it lacks personal jurisdiction over Penthouse and Pet, the Court cannot grant the motions of Williams, Wilson, and ICS requesting a remand to the State District Court of the controversy involving the TDA. That leaves pending, however, the dispute involving the $8000 promissory note over which Williams sued Wilson and ICS.
 

 The district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).
 
 [1]
 
 The power of a district court to adjudicate pendent state law claims after it has disposed of the federal claims that originally invoked its jurisdiction is unquestionable.
 
 Guidry v. Bank of LaPlace,
 
 954 F.2d 278, 285 (5th Cir.1992). The Supreme Court in
 
 United Mine Workers v. Gibbs,
 
 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) emphasized that the power of the district court to hear pendent state law claims is discretionary and that such courts should refrain from deciding state law claims that are more appropriately decided in state courts.
 
 Guidry,
 
 954 F.2d at 285 (citing
 
 Gibbs,
 
 383 U.S. at 726; 86 S.Ct. at 1139).
 

 The Supreme Court in
 
 Carnegie-Mellon Univ. v. Cohill,
 
 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) subsequently indicated that district courts must decide whether to retain jurisdiction in such cases based on considerations of judicial economy, convenience, fairness, and comity. The Supreme Court went on to say that when a single federal-law claim is eliminated at an early stage of the litigation, the district court has a “powerful reason to choose not to exercise jurisdiction.”
 
 Id.,
 
 at 351, 108 S.Ct. at 619. Indeed, the general rule in this Circuit is to dismiss pendent state claims when the federal claims are dismissed.
 
 Parker & Parsley Petroleum Co. v. Dresser Indus.,
 
 972 F.2d 580, 585 (5th Cir.1992).
 

 After reviewing the record and the
 
 Cohill
 
 factors, the Court recognizes that the state- courts are in a more appropriate position to examine the remaining state law claims brought by plaintiff. The Court finds that although the motions to dismiss and remand have been pending over a year due to the discovery that was conducted on the jurisdictional issues, the case is still in the very early stages of litigation, and no scheduling order has been entered. The Court further finds that the amount of judicial resources invested in this case have been remarkably small. Therefore, dismissal of the state law claim at this time will serve judicial economy. The Court also finds that fairness and principles of comity and federalism indicate that the action should proceed in state
 
 *551
 
 court, and a balance of the
 
 Cohill
 
 factors indicates that the cause belongs in state court.
 
 See Engstrom v. First Nat’l Bank,
 
 47 F.3d 1459, 1465 (5th Cir.1995);
 
 Parker & Parsley,
 
 972 F.2d at 587.
 

 III. Conclusion
 

 The Court finds that it lacks personal jurisdiction over Penthouse and Pet. Penthouse and Pet’s motions to dismiss (Doc. Nos. 3,17) are GRANTED. It is ORDERED that Williams, Wilson, and ICS’s claims against Penthouse and Pet are DISMISSED for lack of personal jurisdiction.
 

 The motions to remand by Williams, Wilson, and ICS (Doc. Nos. 9, 11, 12) are GRANTED IN PART AND DENIED IN PART. It is ORDERED that Williams’ claim against Wilson and ICS on the $8000 promissory note is REMANDED to the 285th Judicial District Court of Bexar County, Texas. In all other respects the motions to remand are DENIED.
 

 All remaining pending motions in this cause are DISMISSED AS MOOT. This case is ORDERED CLOSED.
 

 [1]
 

 . What was formerly known as "pendent jurisdiction” is now included within the term "supplemental jurisdiction.”
 
 See Samaad v. City of Dallas,
 
 940 F.2d 925, 928 n. 2 (5th Cir.1991).