United States Court of Appeals,

Fifth Circuit.

No. 91–5747.

FIDELITY & DEPOSIT COMPANY of MARYLAND and Fidelity Deposit Company, Plaintiffs–Appellees,

v.

COMMERCIAL CASUALTY CONSULTANTS, INC., Defendants,

Commercial Casualty Consultants, Inc., M. Brant Ward and Larry J. Benson, Defendants–Appellants.

Nov. 2, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants M. Brant Ward (Ward) and Larry J. Benson (Benson) appeal from the district court's judgment casting them personally for their corporation's debt. Appellants assert that the evidence was insufficient to support the jury's findings that the corporate entity should be disregarded and that Ward and Benson knowingly breached a fiduciary duty owed to Fidelity. Ward and Benson also assert that the district court erred in awarding attorney fees to appellees. We find the evidence insufficient to support the judgment on the theory of corporate disregard, but sufficient to support the finding that Ward and Benson knowingly participated in the breach of a fiduciary duty. Because we affirm the judgment solely on the tort theory, the attorney fee award must be reversed.

I.

During 1986, Ward and Benson were the sole shareholders of Commercial Casualty Consultants, Inc. (Commercial), an independent insurance agency. In May 1986, Fidelity & Deposit Company (Fidelity) entered into an Agency Agreement with Commercial. Under the agreement, Fidelity authorized Commercial to receive applications for bonds and insurance policies to be underwritten by Fidelity. The contract allowed Commercial to collect the premiums due on the Fidelity policies and retain commissions earned on the gross premiums collected. The agreement also

required Commercial to segregate and hold as a fiduciary Fidelity's premiums and remit those sums promptly to Fidelity.

Commercial never segregated Fidelity's funds as the agreement required. Instead, it kept those funds with its other gross receipts in a single account. To establish that Ward and Benson participated in this breach of a fiduciary duty, Fidelity produced substantial evidence that Ward and Benson were aware that a separate account was never established. A more detailed discussion of that evidence is included later in this opinion.

On its corporate disregard theory against Ward and Benson, Fidelity produced evidence that Ward and Benson used Commercial as a sham to perpetrate a fraud. Ward and Benson drew on the Commercial account to pay personal debts and never reimbursed the agency for these expenditures. Ward and Benson did not pay premiums on personal insurance policies Commercial issued to them. Benson wrote hot personal checks to Commercial in exchange for checks drawn on the Commercial account. Benson also pledged Commercial's accounts receivable as security for a $20,000 personal loan.

The case was tried to a jury. At the close of the evidence, the district court granted Fidelity's motion for directed verdict against Commercial on the breach of contract claim for $227,383.91. Commercial does not contest that ruling. The case continued as to Ward and Benson. In their answers to special interrogatories, the jury found Ward and Benson liable on both the tort theory and the corporate disregard theory.[1] The court entered judgment against appellants on the verdict.

---

Number 5. Do you find from a preponderance of the evidence that Defendants Ward and Benson knowingly participated in a breach of a fiduciary duty, if any, by defendant Commercial Casualty Consultants....

> Mr. Ward. Yes.
>
> Mr. Benson. Yes.
>
> Number 6. Do you find from a preponderance of the evidence that Defendants, Ward or Benson, used Commercial Casualty Consultants, incorporated as a sham to perpetuate a fraud on Fidelity and Deposit Company?
>
> Defendant Ward. Yes.
>
> Defendant Benson. Yes.

Following a separate hearing, the court ordered Ward and Benson to pay Fidelity's attorneys fees in the amount of $75,000.  In this appeal, Ward and Benson challenge the judgment on three grounds:  (1) the evidence was insufficient to pierce the corporate veil;  (2) the evidence was insufficient to support the finding that appellants participated in Commercial's breach of its fiduciary obligation to Fidelity;  and (3) the court was without authority to cast appellants for Fidelity's attorney fees.  We consider each of these arguments below.

## II.

Ward and Benson argue first that the evidence was insufficient to support the jury's finding that Commercial's corporate veil should be disregarded.  We review the sufficiency challenge under the familiar *Boeing* standard:

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting the motions [for judgment notwithstanding the verdict] is proper.  On the other hand, if there is substantial evidence ... of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

Texas provides three broad theories of corporate disregard.  The corporate veil is pierced when:  (1) the corporation is the alter ego of its owners or shareholders, (2) the corporation is used for an illegal purpose, and (3) the corporation is used as a sham to perpetrate a fraud.  *Pan Eastern Exploration Co. v. Hufo Oils,* 855 F.2d 1106, 1131–32 (5th Cir.1988);  *Castleberry v. Branscum,* 721 S.W.2d 270, 272–73 (Tex.1986), *superseded on other grounds by* Tex.Bus.Corp.Act Ann. art. 2.21 A (West Supp.1992).  Fidelity sought to recover against Ward and Benson under the third theory, "sham to perpetuate a fraud."

The underlying purpose of corporate disregard generally is to "prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice." *Id.* at 273.  The focus under the sham to perpetrate a fraud theory is on "injustice or unfairness to the claimant caused by the corporation and its owners." *Pan Eastern,* 855 F.2d at 1133 (emphasis added).  For a claimant to establish such unfairness, he must ordinarily demonstrate that he relied on the financial backing of the owners.  "Without reliance, the contract claimant cannot avoid the risk of insolvency that it originally accepted

as part of the bargain." *Id.*

The district court properly instructed the jury that Fidelity was required to establish its reliance on Ward and Benson's credit to prevail on its corporate disregard theory. The court explained that without reliance, Fidelity could not avoid the risk of Commercial's insolvency. Ward and Benson assert on appeal, as they did in the district court, that Fidelity adduced insufficient evidence to support the jury's implied finding of reliance.

We now turn to the evidence Fidelity relies on to support this critical element of its claim. Fidelity points first to testimony by its witnesses that they relied on Commercial's owners to comply with the agency agreement to segregate and remit Fidelity's funds when due. Fidelity presented no evidence that its representatives dealt with Ward and Benson when Fidelity negotiated its contract with Commercial. The record does not reflect that Fidelity was ever aware of Ward and Benson's financial condition or the extent of their involvement with Commercial. Fidelity unquestionably expected Commercial's representatives to segregate and forward Fidelity's premiums and property when due. But we find no record evidence suggesting that Fidelity specifically relied on Ward and Benson to personally perform these functions or guarantee Commercial's performance.

Fidelity also contends that it relied on Benson and Ward to pay Commercial's operating expenses so the corporation would remain solvent. We can safely assume that any party to a contract relies on the other party to engage in sound business practices (i.e., pay its bills) so that it can perform its part of the bargain. But this falls short of the specific reliance on the stockholders of a corporation that is required to disregard the corporate form under a sham theory. Without such specific reliance on Ward and Benson's financial backing, Fidelity cannot avoid the risk of insolvency that it originally accepted as part of its agency agreement.

Finally, Fidelity argues that had it known that Commercial was not being backed by its owners, it would have demanded payment from the agency or billed its insureds directly. Fidelity's lack of interest in Ward and Benson when it entered into the contract belies this argument. Also, the testimony of Fidelity's witnesses does not support this argument. They testified that they would have demanded payment or billed insureds directly if they had known that the agency was insolvent.

Fidelity essentially argues that it assumed under its agency agreement that Ward and Benson would stand behind the agency's debts should it become insolvent. Without any evidence that this assumption was part of Fidelity's agreement with Commercial, such an assumption is insufficient to support a finding of reliance.

The type of specific evidence of reliance suggested in other cases to establish corporate disregard is not present in this case. For example, Fidelity has not shown that the business affairs of Benson and Ward were indistinguishable from those of the agency; that Fidelity relied on the personal financial statements of Benson and Ward; that it obtained a guarantee from Benson and Ward; or that it did not know that it was dealing with the agency as a corporate entity or to the exclusion of the owners. *See Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1294 & n. 23 (5th Cir.1988), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989). Because Fidelity produced insufficient evidence to establish its reliance on appellants' credit, the judgment against Ward and Benson predicated on a corporate disregard theory can not stand.

III.

Ward and Benson next argue that the evidence was insufficient to support the judgment rendered against them in tort for knowingly breaching a fiduciary duty owed to Fidelity. Appellants argue that Fidelity's rights flow strictly from the agency agreement and that the record does not support Fidelity's recovery against them personally on a tort theory.

Commercial cites cases such as *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991) for the proposition that a party to a contract who seeks redress because another party violated a contractual obligation is relegated to an action for breach of contract. But if the contract creates a special relationship imposing a duty, breach of that duty may give rise to an independent tort action. *Id.* at 494 n. 1.

The agency agreement created a fiduciary relationship between Commercial and Fidelity. *Douglas v. Aztec Petroleum Corp.,* 695 S.W.2d 312, 318 (Tex.App.—12 Dist.1985). Appellants do not dispute the existence of this relationship. The jury concluded that Commercial breached its fiduciary obligation to Fidelity and that Ward and Benson knowingly participated in that breach. The

court correctly charged the jury that if it found such participation by Ward and Benson they were liable in tort directly to Fidelity. *See Grierson v. Parker Energy Partners,* 737 S.W.2d 375, 377 (Tex.App.—Houston 1987). The principle dispute therefore is whether the evidence supports the jury finding of Ward and Benson's knowing participation in Commercial's breach of a fiduciary obligation.

The jury found that Commercial breached a fiduciary duty owed to Fidelity in three ways. The breach we focus on today is Commercial's failure to keep premiums for insurance issued by Fidelity "separate and distinct" from Commercial's general revenues.[2]

Ward and Benson argue that they had no knowledge of Commercial's accounts and could not have knowingly failed to keep Fidelity's premiums separate from Commercial's general accounts. The record reveals, however, that Ward and Benson received a recommendation from a consultant in July 1987 to set up a separate account for premiums due insurers. Ward and Benson did not act on this recommendation to require Commercial to establish separate accounts for the insurers' funds.

During late 1987 and 1988, Commercial experienced severe cash flow problems. Ward injected $40,000 into the agency. Key personnel in the agency were replaced. In November 1988, the new president of the agency told Ward and Benson that Commercial owed substantial sums to insurers. He recommended that a separate account be established in which to deposit the insurers' premiums so that these funds would not be commingled with Commercial's funds. Ward and Benson did not see that separate accounts were established.

As of February 1989, Ward and Benson took control of the agency's finances including payment of accounts receivable. The jury was certainly entitled to infer that after this date, Ward and Benson knew that the insurers' funds were deposited into the same account that was used to pay Commercial's general expenses.

We find, therefore, that the evidence is sufficient to support a finding that Ward and Benson knowingly participated in breaching Commercial's fiduciary duty to Fidelity. This is adequate to

---

[2]The jury also found that Commercial breached a fiduciary duty by failing in 1988 and 1989 to timely disclose material facts to Fidelity concerning the financial condition of Commercial Casualty, and by failing in or about January 1989 to escrow renewal premiums as promised.

support the personal judgment against Ward and Benson on a tort theory.

## IV.

In view of our holding that the evidence is insufficient to support Fidelity's recovery against Ward and Benson on a theory of corporate disregard, we agree with appellants that the attorney fee award can not stand. Texas authorizes recovery of attorney fees in limited circumstances. *See Green Tree Acceptance, Inc. v. Pierce,* 768 S.W.2d 416, 425 (Tex.App.—Tyler 1989), *citing International Security Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546–47 (Tex.1973). The tort theory of recovery on which Fidelity's judgment must now rest does not merit an award of attorney fees.

## V.

For the reasons stated above, we affirm the judgment against Ward and Benson solely on the tort theory. Because Texas law does not authorize recovery of attorney fees to a party who prevails in an underlying tort action, we reverse Fidelity's award of attorney fees against Ward and Benson.

AFFIRMED IN PART and REVERSED IN PART.