United States Court of Appeals,

Fifth Circuit.

No. 93-8791.

CAPITAL PARKS, INC., Plaintiff-Appellant,

v.

SOUTHEASTERN ADVERTISING AND SALES SYSTEM, INC., Waco Memorial Park, and Byron D. Reeves, Defendants-Appellees.

Sept. 2, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant appeals the district court's granting of Appellees' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted pursuant to FED.R.CIV.P. 12(b)(6) and denying Appellant's Motion for Leave to Amend Complaint. The court held that the plain language of the option contract between Capital Parks, Inc. ("Capital") and Southeastern Advertising and Sales System, Inc. ("Southeastern"), granting Capital a right of first refusal, was not violated by the proposed sale of Southeastern to Loewen Group International, Inc. ("Loewen"), and that there was no evidence proving Southeastern is merely the alter ego of Southeastern's shareholder Byron Reeves, or that Waco Memorial Park, Inc. is the alter ego of Southeastern. The court also concluded that Capital's attempt to amend its complaint would be futile. We affirm.

FACTS AND PROCEDURAL HISTORY

1

On May 30, 1984, Southeastern contracted with Capital an option which granted to Capital[1] a right of first refusal "with respect to the purchase of all the issued and outstanding capital stock or substantially all of the operating assets of Waco Memorial Park, Inc." ("Waco").  Waco is a wholly-owned subsidiary of Southeastern.

On June 14, 1993, Loewen made an offer to the shareholders of Southeastern to purchase "all the issued and outstanding shares" of Southeastern "together with all of the real estate and business assets used in connection with the operation of the Companies' business and owned individually by the shareholders."  When Capital learned of the offer, it sent a letter to Southeastern to remind and advise Southeastern of Capital's intention to exercise its right of first refusal.  Capital also requested Southeastern to respond with its intentions with regard to Capital's right.

When Capital did not receive a response from Southeastern, it filed suit on August 13, 1993 in state court against Southeastern and Waco seeking to enforce, by specific performance, its right of first refusal to purchase Waco and to enjoin the proposed transaction between Loewen and Southeastern.  Capital amended its petition and added Byron D. Reeves, the President of Southeastern and a shareholder, as a defendant.  Two days later, the defendants removed to suit to federal court.

[1]The Agreement of Purchase and Sale was actually granted to Donovan Miller, Trustee, and his assigns, acting as an agent for Capital Memorial Park, Inc.  Capital Memorial Park, Inc. subsequently changed its name to Capital Parks, Inc.

On September 1, 1993, Defendants filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted. After conducting a hearing on Capital's request for a temporary injunction following expedited discovery, the district court granted the motion on October 14, 1993, entering a final judgment on the same date. On October 20, 1993, Capital filed a Motion to Amend Complaint, to Vacate Order and Judgment, and for Reconsideration which was denied by the court on November 10, 1993. On November 12, 1993, Capital filed notice of appeal of the district court's final judgment dated October 14, 1993.

## STANDARD OF REVIEW

Our review of a district court's dismissal pursuant to Rule 12(b)(6) is *de novo. F.D.I.C. v. Ernst & Young,* 967 F.2d 166, 169 (5th Cir.1992). A court's decision to dismiss for failure to state a claim may be upheld "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Baton Rouge Bldg. and Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986). We must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985).

## RIGHT OF FIRST REFUSAL

Under Texas law, "[a] right of first refusal, as a preemptive right, requires the property owner to first offer the property to the person holding the right of first refusal at the stipulated price and terms in the event the owner decides to sell the

property." *Riley v. Campeau Homes (Texas), Inc.,* 808 S.W.2d 184, 187 (Tex.App.—Houston [14th Dist.] 1991, writ dism'd by agr.) (citing *Holland v. Fleming,* 728 S.W.2d 820, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)). The right is triggered when an owner decides to sell to a *bona fide* purchaser. *Id.* (citing *Sanchez v. Dickinson,* 551 S.W.2d 481, 486 (Tex.Civ.App. 4 Dist., 1977, no writ)).

Capital contends that Southeastern breached its option contract with Capital by failing to uphold its obligation to advise Capital in writing of the *bona fide* written offer it received from Loewen to purchase Waco's assets or stocks. Capital argues that in paragraph three (3) of Loewen's written offer to Southeastern's shareholders, the words "business of the Companies," used to describe the assets to be sold by Southeastern's shareholders to Loewen, includes the operating assets of Waco. Therefore, Loewen's written offer not only includes the stocks of Southeastern but also the assets of Waco. This *bona fide* offer triggered Capital's right of first refusal, which cannot be lost by including Waco as part of the larger merger/transaction between Loewen and Southeastern.

Waco, as a wholly-owned subsidiary, is a separate legal entity possessing its own separate assets and liabilities. *Engel v. Telepromter Corp.,* 703 F.2d 127, 131 (5th Cir.1983) (citing *International City Bank and Trust Co. v. Morgan Walton Properties, Inc.,* 675 F.2d 666, 669 (5th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 511 (1982)). Therefore, Southeastern never succeeded to all of Waco's privileges, powers, rights and

4

duties, and Southeastern cannot transfer the assets of Waco, as such. *Id.*

After review of Loewen's written offer, we find that Capital's right of first refusal was not triggered by Loewen's offer to Southeastern's shareholders. The language of the offer contemplates only a transfer of all of Southeastern's stock and assets to Loewen. The use of the word "assets" in the introductory paragraph, and in paragraph 3 of the offer, merely refers to the assets of the parent corporation, Southeastern, not the subsidiary, Waco.

Capital's right of first refusal triggers only when Southeastern receives a *bona fide* written offer to purchase Waco, which was not enumerated in Loewen's offer to Southeastern's shareholders. The Loewen offer merely involves the transfer of the parent corporation's stock and assets, and therefore does not affect the ownership of assets held by the subsidiary. *Engel,* 703 F.2d at 134. Loewen's offer to Southeastern's shareholders contemplates only a transfer of the control, but not the ownership, of Waco's stock and assets. *Id.* at 135.

### ALTER EGO

This Circuit has extracted three broad theories of corporate disregard under Texas law providing when we may pierce the corporate veil: 1) when the corporation is the alter ego of its owners or shareholders; 2) when the corporation is used for illegal purposes; and 3) when the corporation is used as a sham to perpetrate a fraud. *Villar v. Crowley Maritime Corp.,* 990 F.2d

5

1489, 1496 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994) (quoting *Fidelity & Deposit Co. of Maryland v. Commercial Cas. Consultants, Inc.,* 976 F.2d 272, 274-75 (5th Cir.1992). The purpose of disregarding the corporate fiction is to "prevent the corporation's owners from using the "corporate entity as a cloak for fraud or illegality.' " *Id.*

Capital argues that Texas law does not require corporate formalities to be disregarded; the corporate entity may retain its form but still be a mere "alter ego" if it is used as part of an unfair device to achieve an inequitable result.[2] Therefore, because facts exist demonstrating that the separate corporate existence of Waco is no longer recognized by Southeastern, any offer to purchase the stocks or assets of Southeastern necessarily constitutes an offer to purchase the stocks or assets of Waco sufficient to trigger Capital's right of first refusal.

The district court concluded that piercing the corporate veil of Waco would have no bearing upon the option contract granting Capital a right of first refusal with regard to the sale of Waco because the option contract is binding only upon Southeastern. In addition, the court found that there was no evidence that any of Southeastern's shareholders created Southeastern as a corporate fiction to avoid any type of liability as to the option contract

---

[2]In making its alter ego argument, Capital relies on *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986), which was legislatively overruled five years ago. See TEX.BUS.CORP.ACT ANN. art. 2.21 (West 1994); *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1496 n. 8 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994).

between Southeastern and Capital.  We find that the record fully supports the district court's findings.  Capital has not pleaded facts sufficient to meet the standard required to show alter ego under either theory recognized by this Court.  Therefore, we must affirm the court's findings.

MOTION TO AMEND

Capital's November 12, 1993 notice of appeal explicitly appealed from "the Final Judgment entered in this action of the 14th day of October, 1993."  The notice of appeal did not mention the district court's denial of Capital's Motion for Leave to Amend Complaint, Vacate Order and Judgment, and for Reconsideration filed on October 20, 1993, after the court entered final judgment.  Rule 3(c) of the Federal Rules of Appellate Procedure provides that "[t]he notice of appeal shall ... designate the judgment, order or part thereof appealed from."  Therefore, Capital did not meet the requirements of Rule 3(c).

> Where the appellant notices the appeal of a specified judgment only or a part thereof, ... this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.

*Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 266 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992) (quoting *C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049 (5th Cir.), *cert. denied,* 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981)).

We thus conclude that because Capital's notice of appeal did not specifically mention its motion to amend its complaint, filed and denied after final judgment was entered on October 14, 1993,

7

the issue is not properly before us.

CONCLUSION

For the following reasons the judgment of the district court is AFFIRMED.

8