**Bridget YSASI and Azalia Garcia Plaintiffs,**

v.

**NUCENTRIX BROADBAND NET-WORKS, INC., DirecTV, Inc., and Does 1–40. Defendants.**

**No. CIV.A.C–02–001.**

United States District Court, S.D. Texas, Corpus Christi Division.

April 16, 2002.

Brian Powers, Corpus Christi, for Plaintiff or Petitioner.

Brent N. Bumgardner, Munsch Hardt et al, Dallas, William Earl Maxwell, Jr., Jorge C. Rangel, The Rangel Law Firm, Corpus Christi, Jeffrey Ray Bragalone, McKool Smith, Dallas, William Mike Mills, Atlas & Hall, McAllen, for Defendant or Respondent.

## ORDER OF DISMISSAL

JACK, District Judge.

On this day came on to be heard Defendant Nucentrix Broadband Networks, Inc.'s ("Nucentrix") Motion to Dismiss. For the reasons stated herein, the Court GRANTS Nucentrix's Motion. In addition, the Court DISMISSES Plaintiffs claims against Defendant DirecTV, Inc. ("DirecTV") and the "John Doe" Defendants Does 1–40 ("Does 1–40").

## I. JURISDICTION

The Court has jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367.

## II. FACTS

Since September of 1999 Plaintiff Garcia has been a subscriber of the DirecTV television programming service. Plaintiff Garcia leased receiving equipment, including a remote controller, from Nucentrix in order to receive and decode this programming. Plaintiff Ysasi, although not a subscriber of DirecTV, also leased receiving equipment, including a remote controller, from Nucentrix.

Plaintiffs bring the following claims: 1) under the Consumer Leasing Act ("CLA")

and Regulation M thereunder regarding Nucentrix's alleged failure to make certain representations "clearly and conspicuously" with respect to their remote control leases [1] with Plaintiffs and the class (Pls.' Compl., ¶ 44, 46 & 50); 2) under the Truth in Lending Act ("TILA") and Regulation Z thereunder regarding Nucentrix's alleged failure to make certain required disclosures in the receiving equipment leases with Plaintiffs and the class (Pls.' Compl., ¶¶ 64, 66 & 70); 3) under the Magnuson–Moss Warranty Act ("MMWA") regarding both Defendants' alleged failure to comply with implied warranties of merchantability and fitness of the receiving equipment supplied to Plaintiffs and the class (Pls.' Compl., ¶¶ 83, 87 & 92); and 4) under the Uniform Commercial Code ("UCC") § 2A.108(2) by Nucentrix inducing the receiving equipment leases with Plaintiffs and the class by unconscionable conduct. (Pls.' Compl., ¶¶ 107, 110 & 116) Plaintiffs bring their CLA and TILA claims pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and their state law claims, the MMWA and UCC claims, pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

As relief, Plaintiffs seek to have a class certified to recover statutory, actual, and punitive damages as well as attorney fees, costs and declaratory judgment relief.

On February 6, 2002, Defendant filed the instant Motion to Dismiss. On February 12, 2002 Plaintiff filed its Response in opposition. The Court now considers the Motion.

## III. DISCUSSION

### A. Standard of Review

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court to

---

1. Nucentrix, as claimed at a hearing held on March 13, 2002, does not lease remote controllers alone. They only lease receiving equipment, either with or without a remote control. Plaintiffs concurred with this statement at the hearing.

dismiss a claim on the basis of dispositive law. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). When ruling on a 12(b)(6) motion to dismiss, the Court must accept the plaintiff's factual allegations as true, and view these allegations in a light most favorable to the plaintiff. *Capital Parks, Inc. v. Southeastern Advertising & Sales Sys.*, 30 F.3d 627, 629 (5th Cir.1994); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994); *O'Quinn v. Manuel*, 773 F.2d 605, 605–8 (5th Cir.1985). In a 12(b)(6) motion, the Court should not look beyond the pleadings. *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). A 12(b)(6) motion should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102 (1957); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir.1991). The question before the Court in examining a Rule 12(b)(6) motion is whether the plaintiff's complaint states any valid claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102 (1957); *Lowrey v. Texas A & M Univ. System*, 117 F.3d 242, 247 (5th Cir.1997); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir.1991).

■ Since federal courts simply require "notice pleading," the Court construes Plaintiffs' pleading liberally, and lack of detail does not constitute a sufficient ground to dismiss a complaint under Rule 12(b)(6). *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985).

## B. Consumer Leasing Act ("CLA")

■ The CLA was intended "to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements." 15 U.S.C. § 1601(b). "Consumer lease" is defined under the statute to mean:

> a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding fourth months, and for a total contractual obligation not exceeding $25,000, primarily for personal, family or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 1602(g) of this title.

15 U.S.C. § 1667(1). Congress included in the Act a provision expressly authorizing the Federal Reserve Board to promulgate regulations under the CLA. 15 U.S.C. § 1667f. Regulation M, 12 C.F.R. § 213.2, addresses the definitions under the CLA. Regulation M exempts from regulation under the CLA leases of personal property that are incident to the lease of real property. *See* 12 C.F.R. §§ 213.2(e)(2). In the official staff commentary to the CLA definitions, the Federal Reserve board states that leases incident to a service are also exempt. *See* 12 C.F.R. Pt. 213, Supp. I. Specific leases listed that are not subject to CLA regulation are leases for "home entertainment systems requiring the consumer to lease receiving equipment that enables a television to receive the transmitted programming." *Id.*

Nucentrix leases to Plaintiffs personal property incident to a service, to wit: receiving equipment enabling a television to receive and decode the transmitted programming. Undisputedly included in that equipment is a remote control. At the

hearing held on March 13, 2002, Plaintiffs admitted that the CLA cause of action was pleaded specifically with respect to the remote controllers only so as to avoid the Federal Reserve Board official staff commentary exemption for television programming receiving equipment. Plaintiffs' creative pleading to avoid this exemption notwithstanding, all claims against Nucentrix under the CLA must be dismissed for failure to state a claim.

### C. Truth in Lending Act ("TILA")

■ Congress designed the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, to protect consumers from inaccurate and unfair credit practices. *Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475, 477 (5th Cir.1995). The TILA's purpose is to protect the consumer from inaccurate and unfair credit practices, and "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a); *Id.* at 479. Like the CLA, Congress gave the Federal Reserve Board the "authority normally given to administrative agencies to promulgate regulations designed to 'carry out the purpose of the Act.'" *Fairley*, 65 F.3d at 479 (citations omitted); 15 U.S.C. § 1604(a). Accordingly, the Federal Reserve Board promulgated Regulation Z to implement the TILA. *Id.*[2]

■ Only if there is a "credit sale," does the TILA require a series of disclosures that must be made before the consummation of the credit agreement. *See Ortiz v. Rental Management, Inc.*, 65 F.3d 335, 338 (3rd Cir.1995). In the event that a creditor fails to disclose any of the credit terms required under the TILA and its regulations in a credit sale, a consumer may bring a civil action against the creditor. 15 U.S.C. § 1640; *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir.1996).

The TILA defines a "credit sale" as:

any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or, for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

15 U.S.C. § 1602(g) (emphasis added). However, 'rent-to-own' leases (described in the second sentence of the "credit sale" definition above) that are "terminable without penalty at any time by the consumer" are exempted from TILA provisions under Regulation Z. 12 C.F.R. §§ 226.2(a)(16).

■ "Creditor" is defined as:

a person who both (1) regularly extends, whether in connection with loans, sales or property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). Thus, "whether one is a TILA creditor is a bifurcated question, requiring a person both to be a 'creditor'

---

**2.** The Federal Reserve Board has also published extensive "Official Staff Interpreta- tions" of the TILA. 12 C.F.R. Pt. 226, Supp. I.

in general, by extending credit in a certain minimum number of transactions, and to be the 'creditor' in the specific transaction in dispute." *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 411 (3d Cir. 2000) (*citing* James Lockhart, Annotation, *Who is "Creditor within Meaning of § [1602(f) ] of Truth in Lending Act"*, 157 A.L.R. 419, 443, 1999 WL 887502 [1999] ) (quotation marks omitted).[3]

This Court need not determine whether Nucentrix is a creditor in general[4] as it finds that Nucentrix is not a creditor in the transactions with Plaintiffs. Nucentrix's leases with both Plaintiffs are not credit sales as defined in the TILA. First, neither lease is a "credit sale" as Nucentrix does not extend credit to any subscriber under the leases. The TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). As Plaintiffs make monthly payments "in advance" on their leased receiving equipment, no credit is being extended from Nucentrix to Plaintiffs. (*See* leases, attached to Def. Nucentrix's Mot. to Dismiss at Exh. A at "Payment" and Exh. B, ¶ 3)

Plaintiffs, implicitly acknowledging that their receiving equipment leases are not "credit sales" on their face, attempt to bring the leases within the purview of the TILA by claiming that charges imposed on delinquent accounts are "credit" extending finance charges. (*See* Pls. Compl., ¶¶ 64[e] & 66[d] ) Under Regulation Z, and fatal to Plaintiffs position, these charges are not finance charges. 12 C.F.R. § 226.4(c)(2) ("charges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar occurrence" are not finance charges). Moreover, as the Eleventh Circuit has held, a flat "late payment charge" cannot be construed as extending credit as defined in the TILA as the charges do not vary over time or relate to the amount of the total bill. *Hahn v. Hank's Ambulance Service, Inc.*, 787 F.2d 543, 544 (11th Cir.1986). Similarly, the fees Plaintiffs complain about are not finance charges but merely late payment charges and thus do not bring the leases within the TILA.

Second, Nucentrix's leases with Plaintiffs are not "rent-to-own" leases, much less TILA covered rent-to-own leases; neither Plaintiff pays a sum substantially equal to the value of the property nor will they, contrary to Plaintiffs contention, become the owner of the property upon full compliance with their lease obligations— the leases explicitly state that Nucentrix retains ownership of the receiving equipment. (*See* leases, attached to Def. Nucentrix's Mot. to Dismiss at Exh. A at "Ownership of Equipment" and Exh. B, ¶ 7) In short, like a cable subscriber with a cable box, Plaintiffs merely lease receiving equipment to receive television program-

---

**3.** Even a party who meets the general § 1602(f) definition of a creditor and actually negotiates to extend consumer credit nevertheless is not considered subject to TILA if the transaction is never consummated and does not lead to an actual extension of consumer credit. *See, e.g., Clark v. Troy and Nichols, Inc.*, 864 F.2d 1261, 1263–64 (5th Cir.1989) (TILA claims can only be maintained where a loan transaction has been consummated). Thus, Plaintiffs' attempt to bring any proclaimed "offer" of Nucentrix's as a claim under the TILA must fail. While it may be beneficial in not having false or inaccurate information provided to any prospective borrower, there is obviously more reason for concern when an individual actually becomes indebted in reliance on such terms than when no debt obligation is incurred.

**4.** This Court does, however, note the holding of another court that there is no "lending relationship" between television programming receiving equipment providers and their customers. *Rivera v. AT & T Corp.*, 141 F.Supp.2d 719, 723–24 (S.D.Tex.2001).

ming. Moreover, even if these leases were construed as rent-to-own leases, because there is no termination penalty they are not covered by the TILA. (*See* leases, attached to Def. Nucentrix's Mot. to Dismiss at Exh. A at "Termination" and Exh. B, ¶ 8)

Thus, this Court finds the claims made under the TILA against Nucentrix must be dismissed with prejudice.[5]

### D. State Law Claims

■ Finding that Plaintiffs have failed to state a cause of action under either the CLA or the TILA, this Court also dismisses the supplemental state law claims against Nucentrix, DirecTV, and Does 1–40, without prejudice. These state claims were here solely by virtue of supplemental jurisdiction; in the absence of a federal claim, this Court is without power to hear them. *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir.1999)(the "general rule" is to dismiss state claims when the federal claims to which they are supplemental to are dismissed); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989); *see also Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, n. 7, 98 L.Ed.2d 720 (1988); 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

For the reasons stated herein, this Court GRANTS Nucentrix's Motion to Dismiss and DISMISSES with prejudice the CLA and TILA claims against Nucentrix and Does 1–40.[6] In addition, this Court DISMISSES without prejudice the state law claims against Nucentrix, DirecTV, and Does 1–40.[7]

---

5. This Court notes that Plaintiffs claim that both the TILA and CLA apply to their leases with Nucentrix—as TILA "credit sales" and as CLA "consumer leases." However, the CLA explicitly excludes from its definition of consumer lease TILA credit sales. *See* 15 U.S.C. § 1667(1). Thus, this Court can only conclude that Plaintiffs attempted to bring claims under the CLA, aware that they had no genuine TILA claims. Otherwise, Plaintiffs had no reason to bring CLA claims, as they would fall under the clear and straight forward language of the CLA. This is all the more likely considering the artful way in which Plaintiffs pleaded their CLA claims, as discussed *supra*.

6. As the CLA and TILA claims against Nucentrix were dismissed with prejudice, these claims against Does 1–40 must likewise be dismissed with prejudice as they are brought against Does 1–40 as affiliates of Nucentrix and parties to the receiving equipment leases.

7. The only claim brought against DirecTV, as admitted by Plaintiffs at the March 13, 2002 hearing, was the supplemental MMWA state law claim, which must be dismissed *sua sponte* because the federal claims it was supplemental to were dismissed. *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.) (the district court enjoys wide discretion in determining whether to retain jurisdiction over remaining state law claims), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).