IKUTA, Circuit Judge,
dissenting:
Not content with our task, prescribed by Article III, of deciding the controversies raised by the parties, the majority has decided to ask and answer its own legal questions instead. At oral argument, the majority sua sponte raised the possibility that instead of addressing Harold Hall’s sole argument on appeal that the district court had erred in rejecting his Fourteenth Amendment claim, we could revive and address an unrelated and unappealed procedural issue: whether, over five years earlier, the district court had erred in denying Hall’s motion to amend his complaint to add a new Fifth Amendment claim.
*1074 Today, the majority takes itself up on that offer. It begins by creating a novel legal argument for Hall and then, having concluded that its own argument has merit, it proceeds to resolve the case on those grounds. Maj. Op. at III.B. In doing so, the majority disregards the most basic principles of judicial restraint, erroneously overturns a district court decision that we have no jurisdiction to review, and gives Hall relief that he never asked us to give. While the majority claims that these imprudent steps are necessary to “safeguard the fairness, integrity and reputation of our courts,” maj. op. at 1078, I fear that they will have the exact opposite effect. I dissent.
I
Because the majority’s impassioned retelling of Hall’s story is economical with the procedural facts relevant to this appeal, I will begin by outlining them here.
A
In 2003, a split panel of this court granted Hall’s habeas petition on the grounds that “false and material evidence was admitted at Hall’s trial in violation of his due process rights,” and the state court’s contrary ruling was an unreasonable determination of the facts. Hall v. Dir. of Corrections, 343 F.3d 976, 985 (9th Cir.2003) (Hall I). Hall I rejected Hall’s other constitutional claims, including his Fifth Amendment claims for violation of his Miranda rights and right against self-incrimination, stating “[w]e have examined the record and find that these claims are without merit.” Id. at 981 n. 5.
In March 2005, Hall brought suit for money damages under 42 U.S.C. § 1983 against the City of Los Angeles, the Los Angeles Police Department, and various police officers involved in his prosecution. He alleged claims for relief based on his unlawful arrest in violation of the Fourth Amendment and the use of false evidence against him at trial in violation of his Fourteenth Amendment due process rights.
Some two years later, in May 2007, after the close of discovery and less than five months before the scheduled trial, Hall moved to amend his complaint. The proposed amended complaint dropped Hall’s Fourth Amendment claim, which had become time-barred in light of a recent Supreme Court case, and added an entirely new claim for violation of his Fifth Amendment right against self-incrimination.[1]
The City objected to the proposed amendment. First, the City asserted that, contrary to his declaration, Hall had failed to follow local rules requiring the parties to meet and confer prior to the filing of any motion to amend. See C.D. Cal. Local Rule 7-3. Second, according to the City, Hall had unduly delayed his attempt to amend the complaint: he knew all the facts underlying his Fifth Amendment claim when he originally filed suit in March 2005, yet he unreasonably waited over two years to add that new claim. Further, the City contended, this amendment would be prejudicial because it would require the City to prepare for an entirely new constitutional claim with only months to go before trial and without the benefit of additional discovery. The district court agreed, holding that Hall had failed to *1075 comply with the requirement to meet and confer, and also that his undue delay in amending his complaint would be prejudicial to the City. Accordingly, on June 19, 2007, it denied Hall’s motion for leave to amend his complaint.
The City then filed a motion for summary judgment on Hall’s one remaining claim: that the City’s police officers violated his Fourteenth Amendment due process rights by using interrogation techniques so coercive that they knew the interrogation would generate false evidence. The district court granted summary judgment to the City on this claim, partly because it concluded that Hall I’s determination that Hall’s self-incrimination claim was “without merit,” Hall I, 348 F.3d at 981 n. 5, had a preclusive effect on Hall’s Fourteenth Amendment false evidence claim, which also focused on the police officers’ allegedly coercive interrogation tactics.
In December 2007, Hall filed a notice of appeal stating his intent to appeal the district court’s order granting the City’s summary judgment motion. Neither the notice of appeal nor Hall’s appellate briefing made any mention of the district court’s June 2007 denial of his motion to amend his complaint. Instead, Hall challenged the district court’s determination that Hall I precluded his Fourteenth Amendment claim, and reiterated his argument that his Fourteenth Amendment right to be free from prosecution based on false evidence had been violated. In July 2009, a different panel of this court reversed the district court’s conclusion that Hall I had a preclusive effect, and remanded for further consideration of Hall’s Fourteenth Amendment false evidence claim. Hall v. City of Los Angeles, — Fed.Appx. -, 2009 WL 2020851 (9th Cir.2009) (Hall II).
On remand, the district court again granted summary judgment to the City. First, the court held that Hall’s claim was not cognizable under the Fourteenth Amendment, but should have been raised as a violation of his Fifth Amendment right against self-incrimination. Second, the district court ruled that even if Hall’s claim was cognizable under the Fourteenth Amendment, there was no genuine issue of material fact that the City’s police officers had generated false evidence. Hall filed a notice of appeal challenging the district court’s order granting the City summary judgment.
B
This second appeal is now before us. As in his first appeal, Hall advances no argument that the district court erred in June 2007 when it denied his motion to add a Fifth Amendment claim to his complaint. In fact, the gist of Hall’s argument is that the district court erred in holding that his claim was cognizable only under the Fifth Amendment for the simple reason that he was not bringing a Fifth Amendment claim. Rather, he was bringing a broader Fourteenth Amendment claim that the officers “fabricated the evidence (including but not limited to the false confession)” that was used to prosecute him. The City’s briefing responds to Hall’s Fourteenth Amendment arguments.
Thus, on appeal, we should address the question Hall actually raised: whether his Fourteenth Amendment false evidence claim survives summary judgment. Hall relies on our en banc decision in Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001) (en banc), to argue that his due process rights were violated because the City’s police officers used “investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.” Id. at 1076. But, as the majority explains, we have never applied *1076 Devereaux’s prohibition against the fabrication of evidence to adjudicate claims involving the coercive interrogation of a suspect. Maj. Op. at 1069. Whereas Devereaux relies on the “scarce and open-ended” guideposts of substantive due process, Collins v. City of Harker Heights, Tex., 508 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the “explicit textual source” of the Fifth Amendment protects a suspect from coercive interrogation, Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Accordingly, Hall’s claim that the City used his coerced confession to convict him is cognizable under the Fifth Amendment, not the Fourteenth Amendment. See Albright, 510 U.S. at 273, 114 S.Ct. 807. Because Hall has not brought a Fifth Amendment claim, we must affirm the district court’s grant of summary judgment to the City on Hall’s Fourteenth Amendment claim.[2] The majority agrees with this Fourteenth Amendment analysis and thus, it correctly affirms the district court’s grant of summary judgment to the City on Hall’s Fourteenth Amendment claims. That ruling should end this case. It is all that the parties asked us to decide.
II
But that is not all the majority wants to decide. After rejecting Hall’s argument as a failed “repackaging [of] a Fifth Amendment coerced interrogation claim as one for deliberate fabrication of evidence arising under the Fourteenth Amendment,” maj. op. at 1069, the majority then proceeds sua sponte to offer Hall a different, unasked for, package of relief: a second chance to add a Fifth Amendment claim to his complaint, five years, two summary judgments, and two notices of appeal after the fact. To do so, the majority posits an appeal (one not actually brought by Hall) from the district court’s June 2007 order denying Hall’s motion to amend his complaint; asserts appellate jurisdiction over this theoretical appeal; posits an argument (one not actually raised by Hall) for why the district court abused its discretion by denying Hall’s motion to amend his complaint; and relies on that argument to conclude that the district court did abuse its discretion. This enterprise has no basis in precedent and disregards many of our long-standing jurisdictional and procedural limitations.
A
The majority begins by skipping over the most important limitation on a federal court: our jurisdiction. Here, we are simply without authority to review this “appeal” of the district court’s long-forgotten denial of Hall’s motion to amend. It is a basic requirement of appellate jurisdiction that “[t]he notice of appeal must ... designate the judgment, order or part thereof being appealed from.” Fed. R.App. Proc. 3(c);[3] see Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (“[N]oneompliance [with Rule 3] is fatal to an appeal.”); Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 n. 3, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (refusing to waive a noncompliant notice of appeal because “a *1077 litigant’s failure to clear a jurisdictional hurdle can never be ‘harmless’ or waived by a court.”). Hall’s notice of appeal identifies only the second summary judgment; he does not designate the district court’s June 2007 denial of leave to amend his complaint as a subject of appeal, nor does he provide any indication of an intent to challenge that order in his briefing or argument to this court. Cf. Shapiro ex rel. Shapiro v. Paradise Valley Unified School Dist. No. 69, 374 F.3d 857, 863-64 (9th Cir.2004) (holding that an insufficient notice of appeal was remedied by sufficient appellate briefing).
The majority claims it has jurisdiction because “earlier, non-final orders become reviewable” once a district court enters a final judgment. Maj. Op. at 1070. While the majority is correct in explaining when an interlocutory order satisfies the finality requirements of 28 U.S.C. § 1291, the majority ignores the separate jurisdictional bar provided by Rule 3. Even if an interlocutory order becomes sufficiently final by merging with a later final judgment, the appellant must still identify the prior order in the notice of appeal or discuss it in its appellate briefing in order to demonstrate some intent to appeal it. See Lynn v. Sheet Metal Workers’ Int’l Ass’n, 804 F.2d 1472, 1481 (9th Cir.1986). That was not done here.[4] Accordingly, we lack jurisdiction to consider the district court’s June 2007 order denying Hall leave to amend his complaint to add a Fifth Amendment claim. See, e.g., Johnson v. Smithsonian, Inst., 189 F.3d 180, 185 n. 2 (2d Cir.1999) (dismissing an appeal of an order denying leave to amend a complaint for lack of compliance with Rule 3(c)); Capital Parks, Inc. v. Southeastern Ad. and Sales Sys., Inc., 30 F.3d 627, 630 (5th Cir.1994) (same).
B
Even if we could set aside this jurisdictional issue, the majority should not have abandoned the long-standing procedural rules we have developed to maintain judicial restraint. First, it is hornbook law that “[w]e need not and do not consider a new contention that could have been but was not raised on the prior appeal.” Munoz v. Imperial Cnty., 667 F.2d 811, 817 (9th Cir.1982); see also Jimenez v. Franklin, 680 F.3d 1096, 1099-1100 (9th Cir. 2012). As described above, Hall could have challenged the district court’s June 2007 order denying him leave to amend when he appealed that court’s first summary judgment order to a prior panel of this court. Because he “failed to do so,” he “cannot relitigate the issue here.” Jimenez, 680 F.3d at 1100.
Second, it is also well established that “[w]e will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant’s opening brief.” United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992) (internal quotation *1078 marks omitted). The majority concedes that such waiver occurred here, but it nevertheless considers Hall’s forfeited argument because the failure to consider it here would result in a manifest injustice and Hall’s failure to raise the issue properly did not prejudice the City’s defense. See id.; Maj. Op. at 1070-72.
Both conclusions are incorrect. As a general matter, we have reached unbriefed issues to avoid “manifest injustice” only in criminal or deportation cases, where the deprivation of rights resulting from a waiver are most severe. All the cases cited by the majority to support its “manifest injustice” reasoning are consistent with this pattern. Maj. Op. at 1071-72. See, e.g., United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) (noting that such “exceptional circumstances” arise “especially in criminal cases”); Ullah, 976 F.2d at 514 (“[I]t is ‘manifestly unjust’ to reverse the conviction of one co-defendant but to uphold the conviction of another co-defendant when the same error affected both defendants.”). The majority fails to point to a single case holding there was “manifest injustice” where the only thing at stake was the loss of civil damages, as is the case here.
The majority also errs in concluding that our consideration of Hall’s waived argument regarding amending his complaint would not prejudice the City because it had fair notice of Hall’s Fifth Amendment claim. Maj. Op. at 1072-73. While this was certainly true when Hall attempted to amend his complaint in 2007, the district court denied such an amendment and Hall chose not to appeal that denial. At that point, it was reasonable for the City to conclude that the Fifth Amendment claim was gone. Now, five years and two appeals later, the majority both resurrects and resolves the question whether the district court abused its discretion in denying Hall’s motion to amend his complaint. As a result, the City is on the losing end of an argument it never had a chance to refute.
C
Even if we overlooked our jurisdictional limits, turned back the clock, and pretended that Hall had actually appealed the district court’s denial of leave to amend, the majority is still wrong in reversing the district court. We have repeatedly held that a district court does not abuse its discretion in denying a motion to amend a complaint “where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.” Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995); Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990); Vincent v. Trend W. Technical Corp., 828 F.2d 563, 570-71 (9th Cir.1987); Stein v. United Artists Corp., 691 F.2d 885, 898 (9th Cir.1982). That principle squarely governs this case. Despite his disingenuous statement that he was “adding no new claim” to the proposed amended complaint, Hall’s excerpts from the red-line he attached to his motion to amend show otherwise:
The individual defendants, while acting under color of law, deprived plaintiff of his civil rights by violating his right under the Fourth-Amendment to be free from unreasonable seizures-and-his-righi under the Fifth and Fourteenth Amendment to due process of law in that they seized plaintiff or caused plaintiff to be seized-and imprisoned, for approximately 19 years, without-a-war-rant-or probable cause to-believe that he was involved in-cr-iminal activity, by knowingly using false and fabricated evidence upon which, including confessions extracted *1079 in violation of the Fifth and Fourteenth Amendments, to convict plaintiff....
“Plaintiff has a right to be free from unreasonable seizures being a witness against himself, as protected by the ■Fourth Fifth Amendment...
These proposed changes demonstrate that the amended complaint merely substitutes a “new theory” (under the Fifth Amendment) for an old one (under the Fourth Amendment). Given that, in the majority’s view, Hall’s original complaint gave rise to a “classic [Fifth Amendment] coerced confession claim,” maj. op. at 1069, Hall has provided no explanation, much less a “satisfactory” one, for why it took him nearly two years to make this change. See Allen, 911 F.2d at 374. The district court’s determinations that Hall had failed to comply with local rules, that there had been undue delay in amending the complaint, and that such a delay prejudiced the City’s defense are not “illogical, implausible, or without support in inferences that may be drawn from the record.” United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). Accordingly, the district court did not abuse its discretion by denying Hall leave to amend.
Ill
As should be obvious by now, this case is not about applying the law to answer the questions raised, briefed, and argued by the parties. Rather, for the majority, this case is about a “confluence of events [ ] not fit for a just and fair society.” Maj. Op. at 1073. It is about “protecting] individuals against arbitrary government action and abuse of power.” Maj. Op. at 1073. And above all, it is about “preventing] a woefully unjust result.” Maj. Op. at 1071. Thus, as the majority tells us, this is not “an ordinary case” involving a district court’s grant of summary judgment in a civil action, “but, rather, an extraordinary one.” Maj. Op. at 1073.
These equitable concerns carry the majority beyond what the Constitution empowers us to do. Article III gives us the authority to decide cases and controversies, provided to us through the “proper adversarial clash” between litigants. Ingalls Shipbuilding, Inc. v. Dir., Office of Workers’ Compensation Prog., Dep’t of Labor, 519 U.S. 248, 266, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997). A fundamental premise of this adversarial system is “that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” NASA v. Nelson, — U.S. -, 131 S.Ct. 746, 756 n. 10, 178 L.Ed.2d 667 (2011) (quoting Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.)).
These limitations are imposed on the judiciary to “ensure that its desire to do good will not tempt it into abandoning its limited role in our constitutional Government.” Missouri v. Jenkins, 515 U.S. 70, 136, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995) (Thomas, J., concurring). By reaching beyond our jurisdiction and beyond the questions “presented and argued by the parties before” us, Nelson, 131 S.Ct. at 756 n. 10, the majority unwisely turns its back on these fundamental principles of judicial restraint and in doing so, undermines the very principles of fairness and integrity it purports to advance.
I dissent.

. Hall’s motion to amend asserts that "plaintiff is adding no claim” to the amended complaint, but this assertion is belied by the amended complaint itself (attached to the motion), which provides a redlined comparison with the original complaint. For example, paragraph 37 of the amended complaint begins:
Plaintiff has a right to be free from unreasonable - seizures being a witness against himself, as protected by the Fourth Fifth Amendment....”

. For similar reasons, we must also affirm the district court's grant qualified immunity to the City's police officers.

. Rule 3(c)(1) provides that
The notice of appeal must:
(A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice ...
(B) designate the judgment, order, or part thereof being appealed; and
(C) name the court to which the appeal is taken.
Fed. R.App. P. 3(c)(1).

. The majority does not just liberally construe Rule 3’s requirements, it ignores them entirely: the notice of appeal here raises no inference of an intent to appeal the district court’s June 2007 order. Cf. Munoz v. Small Bus. Admin., 644 F.2d 1361, 1364 (9th Cir. 1981) (holding that "the rule is well settled that a mistake in designating the judgment appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake.”) (emphasis added). But liberally applying a jurisdictional requirement is not the same as eliminating it, which the majority has effectively done here. See Smith, 502 U.S. at 248, 112 S.Ct. 678 ("This principle of liberal construction does not, however, excuse noncompliance with [Rule 3].”); Torres, 487 U.S. at 315-16, 108 S.Ct. 2405 ("Permitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a jurisdictional threshold.”).